JOHN I. MUNRO, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

**Court of Claims — legislature — constitutional law — claims against the state founded on equity and justice may be recognized by the legislature and an act authorizing the Court of Claims to hear and determine such a claim is not invalid under the Constitution (N. Y. State Const. art. 3, § 19; art. 7, § 6) — two-thirds vote required by the Constitution (Art. 8, § 6) does not apply to such act.**

1. The legislature is not prevented from recognizing claims founded on equity and justice though they are not such as could have been enforced in a court of law if the state had not been immune from suit. The basis for such allowance is the moral obligation or the equity arising out of the facts.

2. The legislature passed the following act (L. 1915, ch. 658): "The Court of Claims is hereby authorized to hear, audit and determine the claim of John I. Munro against the state for injuries alleged

to have been sustained by him while in the employ of the state in the electrical department of the Kings Park State Hospital at Kings Park, and in the course of such employment, by reason of being struck by a patient in such hospital; and if the court finds that such injuries were so sustained, damages therefor shall constitute a legal and valid claim against the state, and the court shall award to and render judgment for the claimant for such sum as shall be just and equitable, notwithstanding the lapse of time since the accruing of damages, provided the claim herein is filed with the Court of Claims within one year after this act takes effect." *Held, first*, that the act does not violate section 19 of article 3 of the Constitution which prohibits the legislature from either auditing or allowing any private claim against the state. The Court of Claims is given authority to hear, audit and determine the claim, and this authority to determine necessarily includes the power to allow or reject as justice and equity may demand. *Second*, section 6 of article 7 of the Constitution does not prevent the allowance of this claim as the claimant had no recourse to any court and no cause of action against the state until it was given to him by the act of 1915. The claim could not, therefore, have been outlawed. *Third*, the two-thirds vote required by section 20 of article 3 of the Constitution does not apply to this act as it makes no appropriation of money.

*Munro* v. *State of New York*, 181 App. Div. 30, affirmed.

(Argued February 14, 1918; decided April 2, 1918.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 3, 1918, affirming a judgment in favor of plaintiff entered upon an award of the Court of Claims.

The facts, so far as material, are stated in the opinion.

*Merton E. Lewis, Attorney-General* (*Edmund H. Lewis* of counsel), for appellant. The state's immunity from liability for claimant's injuries under the common law was not altered by the enactment of chapter 658, Laws of 1915 which violates the provisions of sections 19 and 20 of article 3, and section 9 of article 8 of the Constitution of the state. (*Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *Lewis* v. *State of New York*, 96 N. Y. 71; *Hughes* v. *County of Monroe*, 147 N. Y. 49; *Le Frois* v. *County of Monroe*, 162 N. Y. 563; *Fire Ins. Co.* v. *Village of Keese-*

*ville*, 148 N. Y. 46; *Markey* v. *County of Queens*, 154 N. Y. 675; *Corbett* v. *St. Vincent's Industrial School*, 177 N. Y. 16; *Hill* v. *City of Boston*, 122 Mass. 344; *Hamilton Co.* v. *Mighels*, 7 Ohio St. 109; *Curran* v. *City of Boston*, 151 Mass. 505; *Leavell* v. *Western Kentucky Asylum for the Insane*, 4 L. R. A. [N. S.] 269.) Chapter 658 of the Laws of 1915 violates the provisions of article 3, section 19, of the Constitution of the state. (*Board of Supervisors* v. *State of New York*, 153 N. Y. 279; *People* v. *Klinck Packing Co.*, 214 N. Y. 121; *People ex rel. Crane* v. *Ormand*, 221 N. Y. 283.) Chapter 658 of the Laws of 1915 violates the provisions of article 8, section 9, of the Constitution. (*Cayuga Co.* v. *State*, 153 N. Y. 279; *L. V. R. R. Co.* v. *Canal Board*, 204 N. Y. 471; *Matter of Jensen*, 44 App. Div. 509; *Bush* v. *Board of Supervisors*, 159 N. Y. 212; *Matter of Chapman* v. *State of New York*, 168 N. Y. 80; *Matter of Greene*, 166 N. Y. 485; *People ex rel. Dady* v. *Prendergast*, 144 App. Div. 308; 203 N. Y. 1.) Chapter 658 of the Laws of 1915 is contrary to the provisions of article 3, section 20, of the Constitution. (*People* v. *Allen*, 42 N. Y. 378; *Rumsey* v. *N. Y. R. R. Co.*, 130 N. Y. 88; *N. Y., etc., Bridge Co.* v. *Smith*, 148 N. Y. 540; *Van Antwerp* v. *State of New York*, 218 N. Y. 422.) Assuming that the state is liable under the doctrine of *respondeat superior* for the acts resulting in claimant's injuries, chapter 658 of the Laws of 1915 violates section 6 of article 8 of the Constitution. (*Kellogg* v. *Church Charity Foundation*, 203 N. Y. 191; *Horden* v. *Salvation Army*, 199 N. Y. 233; *People ex rel. Essex Co.* v. *Miller*, 181 N. Y. 439.)

*Willard N. Baylis* and *George P. Sanborn* for respondent. The legislature has the right to appropriate public funds to pay claims against the state founded on moral obligation. (*Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471; *Trustees* v. *Roome*, 93 N. Y. 313; *Cole*

v. *State*, 102 N. Y. 48.)   By the act of 1915 the legislature did not undertake either to audit or allow respondent's claim.   (*People* v. *Hennessy*, 205 N. Y. 301; *Wheeler* v. *State*, 97 App. Div. 276; *Cole* v. *State*, 102 N. Y. 48; *American Bank Note Co.* v. *State*, 64 App. Div. 223; *O'Hara* v. *State*, 112 N. Y. 146; *Wrought Iron Bridge Co.* v. *Attica*, 119 N. Y. 204; *Board of Supervisors of Cayuga Co.* v. *State*, 153 N. Y. 279.)   The state of facts set forth in the act of 1915, chapter 658, did, if established, create a moral obligation on the part of the state, which the act legitimately recognizes.   (*Splittorf* v. *State*, 108 N. Y. 205; *Weber* v. *Buffalo Ry. Co.*, 20 App. Div. 292; *White* v. *State*, 156 App. Div. 5; *Locke* v. *State*, 140 N. Y. 480; *Rexford* v. *State*, 105 N. Y. 229; *Gates* v. *State*, 128 N. Y. 221; *Spencer* v. *State*, 187 N. Y. 484; *Ballou* v. *State*, 111 N. Y. 496; *McDougal* v. *State*, 109 N. Y. 73; *Zorn* v. *State*, 45 App. Div. 163.)   The act of 1915, chapter 658, is not within article 3, section 20, of the Constitution requiring a two-thirds vote of both houses.   (*National Harrow Co.* v. *Bement & Sons*, 163 N. Y. 505; *Day* v. *Town of New Lots*, 107 N. Y. 148; *A. A. R. R. Co.* v. *Johnson*, 134 N. Y. 375; *W. W. M. Co.* v. *Shanahan*, 128 N. Y. 345; *Matter of N. Y. C. & H. R. R. R. Co.*, 136 App. Div. 760.)   Section 6 of article 8 of the State Constitution does not apply to this claim.   (*Martin* v. *State*, 120 App. Div. 633; *Woodhull* v. *Mayor, etc.*, 150 N. Y. 450; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *Gartland* v. *New York Zoological Society*, 135 App. Div. 163.)

CRANE, J.   John I. Munro was in the employ of the state of New York as a fireman and electrician at Kings Park State Hospital, Suffolk county, from January 1, 1906, to the 27th day of September, 1909.   On the latter date, while in the discharge of his duties, he was assaulted by an inmate of the institution and seriously injured.

This insane man, named Zabilski, with some fifteen or twenty other incompetents, under the care and supervision of two attendants, was working on a public highway known as the Smithstown-Huntington road in the vicinity of the hospital. Munro was fixing some electric wires near the highway, and as he was passing along the road near the spot where these incompetents were at work, Zabilski, without any warning, suddenly struck him over the head with a spade, fracturing his skull, injuring his spine, and crippling him for life. At the time of this occurrence, Munro was a strong man, thirty-one years of age, earning about $100 a month, with a wife and three children dependent upon him.

The state continued to pay Munro his full salary until December 1, 1912, and from then until October 1, 1915, the sum of $40 per month, so that he received from the state $3,716.

In 1915, the legislature of the state of New York passed the following act, chapter 658, which became a law May 19, 1915, with the approval of the governor.

" SECTION 1. The Court of Claims is hereby authorized to hear, audit and determine the claim of John I. Munro against the state for injuries alleged to have been sustained by him while in the employ of the state in the electrical department of the Kings Park State Hospital, at Kings Park, and in the course of such employment, by reason of being struck by a patient in such hospital; and if the court finds that such injuries were so sustained, damages therefor shall constitute a legal and valid claim against the state, and the court shall award to and render judgment for the claimant for such sum as shall be just and equitable, notwithstanding the lapse of time since the accruing of damages, provided the claim herein is filed with the Court of Claims within one year after this act takes effect.

" § 2. This act shall take effect immediately."

Thereafter, Munro filed his claim for damages and the matter having been heard in the Court of Claims an award was made to him of $25,000, less $3,716 which he had already received, making a balance due him of $21,284. From an affirmance of this award by the Appellate Division, an appeal is taken to this court upon the ground that this act of the legislature is unconstitutional.

It is said, in the first place, that it violates article III, section 19, of the Constitution which prohibits the legislature from either auditing or allowing any private claim against the state. We do not think so. The Court of Claims is given authority to hear, audit and determine the claim of John I. Munro, and this authority to determine necessarily includes the power to allow or reject as justice and equity may demand. No sum is to be allowed unless it be just and equitable. Such is the meaning of the act. The legislature does not audit the claim; this it could not do under the Constitution, and while the wording of the act is not as precise and as exact as it might have been, yet we think this construction is reasonable and carries out the procedure intended. Such construction is in harmony with previous acts conferring jurisdiction upon the court.

It might appear at first reading as if the legislature had allowed Munro's claim and merely left it to the Court of Claims to fix the amount of damages, but when we read more closely and apply the rules of statutory construction this impression vanishes. " The spirit, not the letter, must control," said MILLER, J., in *Matter of Jensen* v. *Southern Pacific Co.* (215 N. Y. 514, 522) where " may " was held to mean " shall be."

By the first clause of the act the Court of Claims " is authorized to hear, audit and determine the claim of John I. Munro." It is then provided, " if the court finds that such injuries were so sustained, damages

therefor shall constitute a legal and valid claim against the state, and the court shall award to and render judgment for the claimant for such sum as shall be just and equitable." The use of the word " shall " in these latter phrases was not intended to nullify the power of the court to hear, audit and *determine* or make it compulsory to award damages. The clear intent of the legislature was to confer authority and power upon the Court of Claims and not to direct or control its action.

The words " shall " and " must " when found in a statute are not always imperative. (*Matter of State of New York*, 207 N. Y. 582, 585.)

The instances are many in which courts have treated a mandatory word as merely permissive when necessary to sustain an act or accomplish the purpose which was clearly intended. (*Matter of Rutledge*, 162 N. Y. 31; *Canal Commissioners* v. *Sanitary District of Chicago*, 184 Ill. 597; *State* v. *Strait*, 94 Minn. 384, 391.)

In *Anderson's Appeal* (215 Penn. St. 119) it was said: " The word ' shall ' when used by the legislature to a court is usually a grant of authority and means ' may.' "

" As against the government, the word ' shall,' when used in statutes, is to be construed as ' may,' unless a contrary intention is manifest." (*Railroad Co.* v. *Hecht*, 95 U. S. 168, 170.)

" The substitution of one word for another, as ' and ' for ' or,' is permissible in the construction of statutes and ordinances * * * and is required if necessary to sustain an enactment that would otherwise be void." (*People* v. *Frudenberg*, 209 N. Y. 218, 220.)

This act is not unlike the statutes in other cases. (*Cole* v. *State of New York*, 102 N. Y. 48; *O'Hara* v. *State of New York*, 112 N. Y. 146; *Wheeler* v. *State of New York*, 97 App. Div. 276; *S. C.*, 190 N. Y. 406; *Roberts* v. *State of New York*, 160 N. Y. 217; *Bd. Suprs. of Cayuga County* v. *State of New York*, 153 N. Y. 279.)

That the state cannot give its money for private undertakings or in the exercise of gratitude or charity is firmly established. (Constitution, art. VIII, sec. 9.) The legislature, however, is not prevented from recognizing claims founded on equity and justice though they are not such as could have been enforced in a court of law if the state had not been immune from suit. Many are the instances where the state has allowed claims for work performed, or material furnished, or improvements made in conjunction with quasi-public corporations, although there was no legal liability had the state been an individual instead of sovereign. (*Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471; *Trustees Ex. Firemen's Fund* v. *Roome*, 93 N. Y. 313, 327; *Wheeler* v. *State of New York*, 190 N. Y. 406; *Matter of Boston & Albany R. R. Co.*, 64 App. Div. 257; 170 N. Y. 619.)

The basis for such allowance has been the moral obligation or the equity arising out of the facts.

Because many of the cases instancing the power have pertained to work, labor or material furnished, the suggestion is made that no moral obligation exists where the claim is for personal injuries. The authorities, however, do not justify the suggestion. (*Splittorf* v. *State of New York*, 108 N. Y. 205; *Locke* v. *State of New York*, 140 N. Y. 480; *Rexford* v. *State of New York*, 105 N. Y. 229; *Gates* v. *State of New York*, 128 N. Y. 221.)

Section 264 of the Code of Civil Procedure allows recovery for negligence in certain cases where the evidence would establish a liability in an individual or corporation. But the equity or justice of a claim which the state may recognize is not limited by any law that I can find to personal injuries arising out of negligence as defined in the law at any given time.

Negligence as a basis for liability, especially as applied to the relationship of master and servant, has been constantly changing and expanding under statutory enact-

ment. Thus, we have had our employers' liability statutes, both state and federal, and at last the Workmen's Compensation Act making personal injury a risk of the business irrespective of negligence. Can it be that the legislature may place liability upon the employer irrespective of negligence, and that the state itself cannot recognize as a just and equitable obligation a personal injury received by one of its employees unless some legal principle the application of which has now been abolished would have created liability in an individual or corporation?

When a man gives his services or his property to the state under such circumstances that no liability would be created to pay therefor, even if the state were an individual or a private corporation, the legislature may allow such a claim in good morals and fair dealings. (See cases cited above.) Why should there not be a like moral obligation to make some recompense to the man who in his work for the state by an unforeseen accident has given his life or limb? The moral obligation may be as urgent in the one instance as the other.

The act, therefore, does not transgress the constitutional provisions mentioned.

Neither does article VII, section 6, of the Constitution prevent the allowance of this claim as Munro had no recourse to any court and no cause of action against the state until it was given to him by the act of 1915. The claim could not, therefore, have been outlawed. (*O'Hara* v. *State of New York, supra; People ex rel. Essex Co.* v. *Miller,* 181 N. Y. 439.)

The two-thirds vote required by article III, section 20, of the Constitution does not apply to this act as it makes no appropriation of money. At page 218 of 160 New York Reports (*Roberts* v. *State of New York*) it will be seen that the act in that case was also passed, three-fifths being present. (See, also, *Matter of N. Y. C. &*

H. R. R. R. Co. [Village of Ossining], 136 App. Div. 760.)

The judgment appealed from should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, HOGAN, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment affirmed.