Catherine O'Grady, as Administratrix of the Estate of Thomas O'Grady, Deceased, Claimant, v. The State of New York, Defendant.

### Claim No. 16738.

#### Court of Claims, May, 1922.

**Claims against state — services rendered as a detective — investigation of murder case resulting in pardoning of convict — alleged request from governor — when statute too restricted to permit recovery.**

In June, 1916, claimant's intestate, who for many years was a police detective of the city of Buffalo, was conducting a private detective agency in that city. After affirmance by the Court of Appeals of a judgment of conviction in a capital case the then governor of the state primarily and almost entirely as the result of the efforts and skill of claimant's intestate first commuted the sentence to life imprisonment, then to the period the convict had served, and finally on November 28, 1918, pardoned and restored him to citizenship. Under a statute (Laws of 1920, chap. 321) conferring jurisdiction upon this court to hear and

determine the claim for services alleged to have been rendered the state by claimant's intestate as a detective in investigating the said capital case, and authorizing the court to award and render judgment for such sum as might be found due, a claim for all the services and disbursements of claimant's intestate throughout his investigation, except those for which he received pay from sources other than the state, was filed with the Court of Claims within the time prescribed by said statute which also provided that nothing therein should be held as admitting liability for such claim or any part thereof on the part of the state, or as waiving any defense thereto. Upon the hearing the court found as a fact that claimant's intestate did not receive any assurance or promise of payment or reimbursement from the governor before the date of the pardon, and that such services as had been previously rendered were either voluntary or for one or more of the various persons who were interested in the exculpation of the one convicted of murder in the first degree. *Held,* that assuming that such services were rendered at the request or by agreement with the then governor of the state, the language of the statute upon which the claim was predicated was too restricted and limited to permit a recovery for any of the services alleged, and the claim will be dismissed.

The court also found as facts that after the pardon was granted the governor requested the claimant's intestate to procure certain evidence vindicatory of the governor's action in the matter, and that such services, if any, rendered after the date of the pardon were pursuant to the arrangement with the governor, but there was no proof of the nature, extent or value of such services or disbursements.

CLAIM for services.

*Thomas L. Newton* and *George B. Doyle,* for claimant.

*Glenn A. Frank,* deputy attorney-general, for state of New York.

CUNNINGHAM, J. On March 21, 1915, Charles R. Phelps and Margaret Wolcott, citizens of this state, were murdered at their home in Orleans county. Charles F. Steilow was convicted of murder in the first degree for the killing of Phelps and was sentenced to death during the week beginning September 5, 1915. His conviction was affirmed February 23, 1916, by the Court of Appeals and later two motions for a new trial were denied. Execution of the sentence was deferred from time to time by the courts and by the governor.

Thomas O'Grady, the decedent, for many years was a police detective of Buffalo. In June, 1916, he was conducting a private detective agency in that city. In that month he was consulted by various persons who had become interested in Steilow's fate, and was employed by one or more of them to investigate the case. From that time until the end of 1918 O'Grady rendered services of great value and made large disbursements in the investigation, and various payments were made to him from time to time by several of these persons. Primarily and almost entirely as a result of O'Grady's efforts and skill, the governor first commuted Steilow's sentence to life imprisonment, then to the period he already had

served, and finally, November 28, 1918, pardoned him and restored him to citizenship. There is some evidence that, on one or more occasions before November 28, 1918, during the progress of O'Grady's work, the governor urged him to continue or proceed with his activity, and in substance promised him that the state would compensate him for his services and disbursements. This was emphatically denied by the governor. It is unnecessary to discuss at length this issue of fact. We think that the claimant's witnesses construed the governor's approval and appreciation of O'Grady's efforts in a sense which his words did not warrant. We find from all the evidence, including not merely the governor's denial, but the circumstances also, that O'Grady did not receive any assurance or promise of payment or reimbursement from the governor before November 28, 1918, and that such services as he rendered before that date were either voluntary or for one or more of the various persons who were interested in Steilow's exculpation.

On February 1, 1917, the attorney-general designated a special deputy, under section 62 of the Executive Law, to investigate the murder. The claimant does not contend that any of the services involved in this proceeding were authorized or directed either by this special deputy or the attorney-general.

Subsequent to the pardon of Steilow, the governor and O'Grady had a conversation relative to the desire of the former and the ability of the latter to procure certain evidence vindicatory of the governor's action in pardoning Steilow. We find as a fact that the governor requested O'Grady to perform services to that end and stated that the state would pay for them. We find that the services which O'Grady rendered, if any, subsequent to November 28, 1918, were pursuant to that arrangement. The claimant made no proof, however, of the nature, extent or value of such services or disbursements.

The foregoing recital is sufficient to present the issues in controversy. The case was one of intense human interest, disclosing situations rarely excelled in dramatic quality.

This claim is for all the services and disbursements of O'Grady throughout his investigation, except those for which he received pay from sources other than the state. In view of our finding of fact that none of the services or disbursements prior to November 28, 1918, were at the request or by agreement with the governor, further discussion would seem unnecessary. But assuming, for the argument, that they were so rendered, as the claimant contends, there can be no recovery under the statute upon which the claim is predicated. It was filed under chapter 321 of the Laws of 1920, which became effective April 21, 1920, as follows:

"*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

"SECTION 1. Jurisdiction is hereby conferred on the court of claims to hear, audit and determine the claim of the executor or executors, administrator or administrators of Thomas O'Grady, deceased, against the state for services alleged to have been rendered the state, by the said O'Grady, as a detective in investigating the case of Charles F. Steilow convicted of the murder of one Charles R. Phelps at West Shelby, Orleans county, on March twenty-first, nineteen hundred and fifteen, and the court may award to and render judgment for the claimant for such sum as shall be found due, if any, provided the claim herein is filed with the court of claims within six months after this act takes effect.

"§ 2. Nothing herein contained, however, shall be held as admitting the validity of such claim or any part thereof upon the part of the state, or as waiving any defense thereto as provided by this act.

"§ 3. This act shall take effect immediately."

The claim was filed within the period prescribed by the statute. The attorney-general is under the impression that no proof was made of the filing. He contends that we have no jurisdiction for that reason. Quite aside from the right of this court to take judicial notice of its own records, a copy of the claim, and the file mark of the clerk of this court thereon, were received in evidence. It was filed September 3, 1920.

Upon being required by the governor to attend, in person or by deputy, a term of the Supreme Court, or to appear before the grand jury, for the purpose of conducting an action or proceeding, the attorney-general, or the additional counsel designated by him, had authority to obligate the state to pay for services such as are the subject of this claim (Executive Law, § 62, subds. 2, 8, as amended; § 65), but there was no statutory authority for the governor or any other state officer to do so. Furthermore, the State Finance Law prohibited the contracting of an indebtedness by state officers without an appropriation, or the use of a specific appropriation for other purposes. State Finance Law, §§ 35, 36. The legislature specifically provided an appropriation for the payment of the expenses incurred by the attorney-general or his special deputy in this connection. Laws of 1917, chaps. 45, 809.

It is evident there could be no recovery in the absence of the special statute first quoted, even were the alleged agreement actually made by the governor, because of his lack of authority and power thus to bind the state. This the claimant concedes, but relies on the terms of the statute. This statute (1) confers jurisdiction

upon us to hear, determine and render judgment upon the claim of the decedent against the state; (2) for services alleged *to have been rendered the state* by O'Grady in this investigation; (3) we may render judgment for such sum as *shall be found due;* (4) the claim to be filed within six months; (5) and the statute shall not be held to admit the validity of the claim; or (6) *as waiving any defense thereto.* It will be noted that we are confined by the phraseology within a narrow range. The language employed is not such as to describe the services generally, or even as defined by the claimant's evidence, but we are limited in our jurisdiction of the claim specifically to such services as *were rendered the state.* No such services have been established, even if we find the claimant's evidence as facts, because the action of the governor still remains his individual action, and not that of the state. On no theory of the evidence has any claim been established for services *rendered by the decedent to the state.* If it were the intention of the legislature to confer jurisdiction upon us to hear, determine and give judgment on a claim for services rendered *in the investigation of the crime,* or *to the governor,* or rendered *at the instance of* or *by agreement with the governor,* assuming to act for the state, the legislature would have so enacted. Instead, it confined our jurisdiction within the limits indicated by the words " services * * * rendered the state." The difference in this respect between this statute and others which have been construed is palpable. *Munro* v. *State of New York,* 223 N. Y. 208; *County of Cayuga* v. *State of New York,* 112 Misc. Rep. 517; *Callanan* v. *State of New York,* 113 id. 267. The claimant recognizes the accuracy of our construction of the statute. The claim alleges: " That on or about the 21st day of July, 1916, the said Thomas O'Grady was engaged by the State of New York to investigate the merits of applications which were made on behalf of Charles F. Steilow for a new trial upon the grounds that said Steilow was innocent and some other persons had committed the said murder." The claimant's evidence does not satisfy the statute, nor does it follow this allegation of the claim, conceding claimant's evidence to be true.

We are authorized to render judgment only " for such sum as shall be found due, if any." For the reasons already given, no sum is due the claimant. It will be noted that the statute does not use the words " justly due " or " justly and equitably due " as in the cases last cited. Such phrases have been construed to take the determination out of the realm of strict legality and technical obligation and bring it within that of natural justice and equity. *Munro* v. *State of New York, supra; Callanan* v. *State of New York, supra.*

Finally, the statute provides that nothing in it shall be held as waiving any defense to the claim. A somewhat similar clause was construed by this court in *County of Cayuga* v. *State of New York, supra.* Judge Morschauser held that the word "defense" in the act there construed did not include an objection to the jurisdiction of this court, or to the claimant's capacity to sue, and that these were waived. In *Sherlock* v. *State of New York,* 114 Misc. Rep. 491; affd., 198 App. Div. 494, the statute provided: "Nor shall the passage of this act be construed as debarring the state from interposing any legal or equitable defense which it would otherwise have against the alleged claims, except the statute of limitations."

This court held: "It expressly permits the state to interpose any legal or equitable defense except the Statute of Limitations. Therefore, the defense that the state is not liable for the tortious acts of its officers, agents, and servants, has not been waived, and we find the state in this proceeding vigorously urging it. The state is only doing that which the statute in express and unequivocal terms gives it the right to do, and the court must give this defense its legal effect, which is, that it is a complete answer to this claim."

Even without this restrictive construction clause contained in the statute we are construing, it could not reasonably be construed to waive the defense that the alleged promise or agreement by the governor was without authority or power to bind the state, and that there is no sum due to the claimant for that reason. This clause merely makes more positive, if anything, that construction

It would seem that this phrase used in a claim act must be construed with the other provisions of the act and that the correct construction of it is to limit the waiver of defenses by the act to such as are expressly or by reasonable inference from its language waived thereby. These usually are the defenses of lack of jurisdiction, defects in filing, or technical legal defenses to the merits, where the language is such as to require this court to determine the case on the basis of natural justice and equity.

We conclude, therefore, that the language of this act is too restricted and limited to permit a recovery by the claimant for any of the services alleged in the claim, even though the evidence established that they were rendered pursuant to the governor's promise or agreement to pay therefor.

The claim is dismissed.

SMITH and CORWIN, JJ., concur.

Judgment accordingly.