WILLIAMSBURGH SAVINGS BANK, Appellant, *v.* STATE OF NEW YORK, Respondent.

State — moral obligation — jurisdiction of Court of Claims — Legislature may recognize moral obligation — may not delegate to court determination of what its decision ought to be — duty of Legislature to ascertain facts — may confer upon courts duty of confirming its action — must submit to courts question whether facts as matter of law show moral obligation — also final duty of awarding or adjudging payment — sufficient indication in statute conferring jurisdiction upon Court of Claims of decision by Legislature that claims were moral obligations of State — provision that if court should find that claims were founded in right and justice the State should be liable not an evasion by the Legislature of its duties — sufficiency of act to recognize claim and authorize its allowance — decision of court that claim does not possess elements of moral obligation a determination of a question of law reviewable by Court of Appeals — purchase of improvement bonds and certificates and of a tax sale certificate on representation by officers of State that payment is secured by proposed assessments of benefited lands — collapse of plan — erroneous finding that facts do not establish moral obligation as to bonds and certificates — claim on tax sale certificate may be recognized as moral obligation — State not obliged to insist that remedy by assessment be pursued against small part of landowners not yet released.

1. The State may voluntarily recognize just obligations which it fairly and honestly ought to pay even though they do not constitute purely legal claims. When a claim is presented which securely rests upon a foundation of equity and justice and which involves a moral obligation, it may be recognized without infringing upon constitutional

provisions protecting taxpayers against waste and extravagance. But the decision to pursue this course is a privilege and not an obligation, and the State alone, through its Legislature, can decide which course it will pursue. It cannot delegate to the courts or some other agency the duty of determining what its decision ought to be.

2. When proposing to turn a moral obligation into a valid claim, it is, therefore, the duty of the Legislature to ascertain the facts which are thought to give rise to the obligation, but it may confer upon the courts the duty of confirming its action and of determining what the facts actually are upon which such a claim rests and whether they are as the Legislature has decided them to be, in which event, the Legislature must, as incidental to audit and allowance, submit it to the courts to determine whether such facts do as a matter of law show forth a moral obligation within the principles of law which govern that subject. It is also incumbent upon the Legislature to avoid violation of the constitutional prohibition of audit or allowance by it of a private claim and the final duty of awarding or adjudging payment must be performed by some appropriate body after consideration of the facts and law, with full power to reject as well as to award.

3. Chapter 830 of the Laws of 1923 by conferring jurisdiction " upon the Court of Claims to hear and determine the claims [fully described in the statute] * * * in the amounts and with the interest herein set forth as claims founded in right and justice or in law and equity against the State of New York and in right and justice presently payable thereby," sufficiently indicates a decision, so far as the Legislature was concerned, that the claims were moral obligations and ought to be paid, and when it specifically authorized the Court of Claims " among other things " to consider certain facts which were in the minds of the Legislature when the act was passed, this special authorization, with the general jurisdiction conferred upon and possessed by the Court of Claims, authorized that tribunal to develop and consider all the facts which might furnish a foundation for a moral obligation.

4. A further provision that if the court should find that the claims were " founded in right and justice or in law and equity against the State of New York and are in right and justice presently payable thereby " the State should be deemed to be liable therefor and they should constitute legal and valid claims upon which judgments might be rendered against it, was nothing more than a recognition and statement of the rule that if the courts agreed with the Legislature in thinking that the claims did present the necessary characteristics, judgment could be rendered for them; otherwise not. It does not amount to a declaration by the Legislature that it had not reached any decision in respect of the character of the claims. It expressed a recognition of

the limitations upon its power and not an evasion of the obligations of its duties.    The act, therefore, was entirely appropriate and sufficient to recognize the claim and authorize its allowance.

5. The decision by the Legislature that certain facts create a moral obligation is subject to review by the courts, but practically the sole power of the courts in this respect is to determine whether all of the facts established in a given case and presumably within the knowledge of the Legislature do establish such a foundation of equity and justice that the Legislature, within the rules established by the courts, was authorized, if it saw fit so to do, to recognize the justice of the claim. The decision of the courts, therefore, that a claim does not possess the elements of a moral obligation and that the Legislature could not acknowledge it, is the determination of a question of law and reviewable by this court.

6. Where the undisputed facts show that the State in pursuance of an improvement project confided the same to one of its commissions and empowered it to issue bonds and certificates for the purpose of raising moneys with which to carry on the improvement, which should be paid as they became due by assessments levied upon individual properties within an " improvement district " to be defined by the commission, and the commission, acting under such authority, issued bonds and certificates, representing that the value of the benefited lands would be ample to sustain assessments to pay the obligations, and claimant, relying upon such representations, became the owner by purchase of a large amount of such bonds and certificates and also of a tax sale certificate issued to it upon a sale under an assessment for supposed improvements, the proceeds of which were paid to the State, which either still holds them or has expended them upon the improvement, but the plan as an entirety has collapsed and the sources of revenue which it was represented by agencies of the State would be ample for the payment of claimant's securities have largely vanished so that but an infinitesimal part of the amount has been collected by assessment and if it were possible to enforce assessments against benefited land it would more than exhaust their entire value to pay outstanding claims, it cannot be said as matter of law that the State is without any moral responsibility for what has happened and that it must stand unresponsive when asked for relief.    Such facts establish a moral obligation and it was error to hold otherwise.

7. An argument that the amount paid by claimant for the tax sale certificate stands on a different basis and does not constitute an equitable obligation cannot be sustained.    The claimant paid the amount on a tax sale represented by State officials to be based upon lawful and binding assessments on account of the improvement.    Subsequently it was held that none of the tax liens were valid with the

exception of a small amount assessed upon lands whose owners did not join in the attack thereon. The claim is covered by the same general principles as the other obligations and the State may recognize it as a moral obligation.

8. Nor was the State compelled to insist, as an excuse for refusing relief, that an effort should first be made by claimant to enforce assessments against such land as has not been released therefrom. It is conceded that the assessment of the total cost upon owners of such land would amount to confiscation and no way appears in which an assessment of an equitable amount may be made against them.

*Williamsburgh Savings Bank* v. *State,* 213 App. Div. 737, reversed.

(Argued May 25, 1926; decided July 9, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 9, 1925, unanimously affirming a judgment of the Court of Claims dismissing plaintiff's claim upon the merits.

*E. J. Dimock, John C. Loud.* and *Alfred Gregory* for appellant. The State should pay an amount equal to principal and interest on the $170,000 of bonds held by the claimant. (*Quayle* v. *State,* 192 N. Y. 47; *Munro* v. *State,* 181 App. Div. 30; *Cayuga County* v. *State,* 153 N. Y. 279; *People* v. *Westchester County National Bank,* 231 N. Y. 465; *Trustees of Exempt Firemen's Fund* v. *Roome,* 93 N. Y. 313; *Sipple* v. *State,* 99 N. Y. 284; *Cole* v. *State,* 102 N. Y. 48; *O'Hara* v. *State,* 112 N. Y. 146; *Coxe* v. *State,* 144 N. Y. 396; *Roberts* v. *State,* 160 N. Y. 217.) The State should pay an amount equal to principal and interest on the $31,750 of river improvement certificates held by claimant. (*Horton* v. *Andrews,* 191 N. Y. 231.)

*Albert Ottinger, Attorney-General (James Gibson* of counsel), for respondent. The Legislature is without authority to delegate to the Court of Claims the power to convert a moral obligation into a legal obligation. (*Sherlock* v. *State,* 198 App. Div. 494; *Munro* v. *State,* 223 N. Y.

208; *Babcock* v. *State,* 190 App. Div. 147; *Lewis* v. *State,* 197 App. Div. 712; *Lehigh Valley R. R. Co.* v. *State,* 204 N. Y. 471.) The State, through its officers and agents, made no representations nor performed any unlawful acts from which arose any obligation, either legal or moral, to assume payment of the indebtedness of the Canaseraga River Improvement District. (*Weaver* v. *Devendorf,* 3 Denio, 120; *Williams* v. *Weaver,* 75 N. Y. 33; *Rochester White Lead Co.* v. *City of Rochester,* 3 N. Y. 466; *People* v. *Westchester County National Bank,* 231 N. Y. 465; *Gordon* v. *State,* 223 N. Y. 1.)

HISCOCK, Ch. J. The appellant is seeking to establish a claim against the State which is alleged to be supported by a moral consideration. In this attempt it has been confronted by two objections, the first being that there is no such consideration and the second that even if there is the State has never exercised its right to recognize the claim and authorize its allowance. The first objection seems to have been potential with the Court of Claims; the second one with the Appellate Division. There is no dispute concerning the decisive facts and we shall take these as they are presented by the findings of the Court of Claims or by inescapable requests to find.

The State entertained consideration of a scheme to improve Canaseraga creek to the end that there might be a better flowage of its waters and protection to adjacent lands from floods and other damaging conditions. It did not itself undertake primarily to pass upon the feasibility of, and directly to carry out such a project with adequate appropriation for the expenses thereof as it undoubtedly might have done. On the contrary, it confided these duties first of approval of the project subject to its confirmation, and then consummation of it to one of its agencies which was successively the State Water Supply Commission, the River Improvement Commission and the Conservation Commission, the identity of

the particular Commission under which various steps were subsequently taken being of no consequence. Without reciting prior voluminous preliminary and tentative details it may be stated that the State eventually by proper legislation approved the determination of the Commission that this project should be undertaken and to that end it enacted that the Commission should define a district which was to be benefited by the improvement and that the expenses of the latter should be assessed in appropriate proportions against the lands situated in such district, except as the same might be charged in the manner prescribed against counties, towns, cities and villages and the State, and that the Commission should have power to issue bonds and certificates for the purpose of raising money with which to carry on the improvement and which should be paid as they became due by assess- ments levied upon individual properties within the improvement district and collected from municipalities and the State. Assessments and charges against municipalities or the State were eliminated by the Commission and, therefore, those sources of revenue from which to pay bonds and certificates may be dropped from consideration.

In course of time the Commission which had entered upon the prosecution of the work in accordance with the authority conferred upon it began issuing bonds, and later certificates whereof the proceeds were wholly or largely used to pay installments and interest coming due upon the bonds. These bonds were originally available for investment by savings banks but later this characteristic was eliminated by the State with consequential impairment of their value. They and the certificates by their terms and by statute were withheld from the status of legal claims against the State and were to be paid from assessments upon the lands supposed to be benefited as above stated. Nevertheless officers and representatives of the State did make various statements and representations, of course in good faith, which tended to the standing

and appreciation of the securities. For instance the Commission issued a circular, preliminary to floating the bonds, to the effect that they were issued by authority of the State and under proceedings duly taken, that there were included in the improvement area about 11,000 acres of land of a present value of $448,375 and of a potential value when improved of nearly twice that sum less a possible deduction of land worth only about $30,000 and which lands would be subject to assessment for the payment of the bonds. Also as an inducement to the purchase of certificates the Commission furnished claimant's assignor with an opinion of the Attorney-General to the effect that the certificates purchased by it would be proper investments for a savings bank and an engineer's report showing the progress which had been made in carrying out the project. Plaintiff became the owner at a premium of bonds of the par value of $200,000, of which subsequently by direct appropriations from the State Treasury $30,000 were paid, and also of certificates of the par value of $72,750 reduced by payments to $31,750, and also of a tax sale certificate for $27,964.47 issued to it upon a sale under an assessment for supposed improvements. The moneys collected on the sale of the bonds were paid to the State and by it disbursed in payment of the cost and expenses of the project, and the proceeds of the certificates and tax sale certificate were received in like manner and to a large extent applied to the payment of installments and interest becoming due upon the bonds and certificates.

The improvement project as an entirety proved a failure and with the exception of a comparatively small number of acres in the improvement district as originally mapped out, the lands were not at all benefited even if they were not actually injured. The result has been that either by the voluntary action of the Commission in withdrawing lands from the improvement district as originally defined by it, or by action of the courts, a large portion of the

lands constituting the original district have been placed
beyond the reach of assessment for the purpose of raising
money with which to pay claimant's bonds and certifi-
cates as it was originally contemplated and represented
would be done.   Although the Commission took proper
proceedings to secure an assessment in the years 1918,
1919 and 1920 for the amounts respectively of $27,039.22,
$27,846.45 and $47,092.21 necessary to pay installments
of principal and interest due on the obligations issued
in connection with this improvement, no proceedings
have ever been taken for the collection of such assess-
ments, but such amounts were paid directly by the State
out of moneys appropriated for that purpose.   The utter
collapse of the plan to raise money to pay claimant's
bonds and certificates is sufficiently indicated by the
fact that less than $100 has ever been collected by assess-
ment and that the aggregate value is so small of lands
held to have received some benefit or whose owners have
not yet procured immunity by legal proceedings that
if it were possible to enforce assessments against them it
would more than exhaust their entire value to pay out-
standing claims.

There is no question, but on the other hand it is expressly
found, that the claimant in purchasing bonds, certificates
and tax sale certificate relied upon the facts that this
improvement project had been initiated by the State,
that it had been approved by a commission acting as an
agency of the State and also by the State itself and that
as represented by the Commission there were lands of
a value of nearly half a million dollars in their unimproved
condition which would be benefited by the project to the
amount of nearly $400,000 and which " would stand as
the security for the payment of the obligations issued to
cover the cost of the project, that it [the improvement
plan] was in essence if not in legal technicality a State
project and that the State was in right and justice obli-
gated and bound to make sure that the securities issued

by the State officers to provide funds for carrying out the project would be paid even though technically the State was not primarily liable therefor."

Under conditions and upon facts which have thus been stated the Legislature adopted an act (L. 1923, ch. 830) under the provisions of which plaintiff is prosecuting its claim for the recovery of the amount of bonds, certificates and tax certificate referred to on the ground that they are claims based upon a moral consideration which has been recognized by the State. It is necessary to quote only a small part of this act. It provides: " Jurisdiction is hereby conferred upon the court of claims to hear and determine the claims of the holders and purchasers of the following described certificates of indebtedness, bonds and tax sale certificate issued in connection with Canaseraga Creek Improvement District (and which are enumerated in the act and have already been referred to) in the amounts and with the interest herein set forth as claims founded in right and justice or in law and equity against the State of New York and in right and justice presently payable thereby." In hearing said claims the court was expressly authorized to consider amongst other things many of the facts in connection with this improvement project and the investment by plaintiff of its moneys in the various securities already referred to and it was then further and finally provided " If the court finds that such claims or any of them were founded in right or justice or in law and equity against the State of New York, and are in right and justice presently payable thereby, the State shall be deemed to have been liable therefor and they shall constitute legal and valid claims against the State, and the court may award and render judgments for the claimants as shall be just and equitable." With this necessarily rather detailed statement of the facts we come to a consideration of the principles of law which determine their force and effect as a basis for plaintiff's claim.

Fortunately, and creditably to them, our courts have firmly established the proposition that the State as well as an individual may be honorable and may voluntarily recognize just obligations which it fairly and honestly ought to pay even though they do not constitute purely legal claims such as in the case of an individual could be enforced under the compulsion of judgment and execution. By appropriate constitutional provisions taxpayers are protected against waste and extravagance which might result from some passing or mistaken impulse upon the part of the Legislature to make gifts. But when a claim is presented which securely rests upon a foundation of equity and justice and which involves what we have come to define as a moral obligation, it may be recognized without infringing upon these provisions and the State may pursue the same course of honorable conduct as would an individual. But the decision to pursue this course is a privilege and not an obligation. The State may, if it prefers, reject the calls of justice, equity and fair dealing, stand upon its legal rights and leave the claimant without remedy, and the State alone, through its Legislature, can decide which course it will pursue. It cannot delegate to the courts or some other agency the duty of determining what its decision ought to be and if the interpretation by the Appellate Division is correct that the statute now before us does attempt to pass along to the courts the duty of deciding for the State whether the obligations held by claimant constitute moral liabilities which ought to be recognized, the conclusion is inevitable that it has failed of any purpose and that claimant cannot recover under it in this action. We think, however, that the interpretation placed by the Appellate Division upon the act is too narrow and that it is not subject to the condemnation which has been visited upon it.

We ought to approach the interpretation of the statute with a consideration of the general principles which the

Legislature may or must observe when proposing to turn a moral obligation into a valid claim.   In the first place, of course, it is necessary to ascertain the facts which are thought to give rise to this kind of an obligation and while undoubtedly the duty rests upon the Legislature itself of attempting to determine what these facts are, it has a perfect right to confer upon the courts the duty of confirming this action and of determining by that searching examination which is more incidental to judicial processes than to legislative examinations, what the facts actually are upon which such a claim rests and whether they are as the Legislature has decided them to be.   Then assuming that the facts are as assumed by the Legislature that body may, and indeed it must as incidental to audit and allowance, submit it to the courts to determine whether such facts do as a matter of law show forth a moral obligation within the principles of law which govern that subject.   The decision by the Legislature that such an obligation exists upon given facts is subject to review just as much as is its decision that the facts before it warrant the exercise of the police power by laws which would otherwise be unconstitutional. The decision by the Legislature that certain facts create a moral obligation, even if those facts exist, is not conclusive.   The courts will still be called upon to decide whether its judgment was correct.   And lastly it is incumbent upon the Legislature to avoid violation of the constitutional prohibition of audit or allowance by it of a private claim, and the final duty of awarding or adjudging payment must be performed by some appropriate body after consideration of the facts and law with full power to reject as well as to award.

We state these undoubted principles somewhat at length because, when we consider them, it seems to us that the Legislature followed a course in the present statute which was strictly correct and lawful.   We think that when it conferred jurisdiction " upon the Court of Claims

to hear and determine the claims [fully described in the statute] * * * in the amounts and with the interest herein set forth as claims founded in right and justice or in law and equity against the State of New York and in right and justice presently payable thereby " it sufficiently indicated a decision, so far as it was concerned, that the claims were moral obligations and ought to be paid. It would seem to be pretty unreasonable to assume that the Legislature conferred upon the courts power to pass upon and give judgment for claims unless it itself had considered and approved their equitable nature. But recognizing the principles to which we have referred it specifically authorized the Court of Claims " among other things " to consider certain facts which were in the minds of the Legislature when the act was passed. This special authorization, with the general jurisdiction conferred upon and possessed by the Court of Claims, authorized that tribunal to develop and consider all the facts which might furnish a foundation for a moral obligation. And then after all this was done, if the court should find that the claims were " founded in right and justice or in law and equity against the State of New York and in right and justice presently payable thereby " the State should be deemed to be liable therefor and they should constitute legal and valid claims upon which judgment might be rendered against it. This latter provision, especially considered by the Appellate Division as indicating a failure of the State to recognize the meritorious nature of the claims, in our opinion was nothing more than a recognition and statement of the rule that if the courts agreed with the Legislature in thinking that the claims did present the necessary characteristics judgment could be rendered for them; otherwise not. This express bestowal of power upon the courts to decide a question of law which they undoubtedly possessed without any express authorization does not in our opinion amount to a declaration by the Legis-

lature that it had not reached any decision in respect of the character of the claims. It expressed a recognition of the limitations upon its power and not an evasion of the obligations of its duties.

The act, in our opinion, was entirely appropriate and sufficient when tested by the language employed in other similar acts under which judgments against the State have been awarded and affirmed by this court and which have been thoroughly reviewed and analysed in the admirable brief filed in behalf of the appellant. (*Cole* v. *State,* 102 N. Y. 48; *O'Hara* v. *State,* 112 N. Y. 146; *Cayuga County* v. *State,* 153 N. Y. 279, 287, 293; *Munro* v. *State,* 223 N. Y. 208; *Babcock* v. *State,* 190 App. Div. 147; affd., 231 N. Y. 560.) I shall only refer to the details, and that briefly, of three of these cases.

In the *Cayuga County* case the act (L. 1885, ch. 428) simply authorized the presentation of a claim to the State Board of Claims for moneys expended by said county and then provided " and the said Board of Claims is hereby authorized and required to hear and adjust each of said claims   *   *   *   and award the amounts thereof or such sums as said Board *shall consider equitable and just.*" It was written, " The point that the act   *   *   *   did not validate the claim, but referred it to the Board of Claims to pass upon its validity, is, in view of   *   *   *   the language of the act, untenable. By necessary implication the Legislature by the act assumed liability   *   *   *   and it was left to the Board of Claims to fix the amount as should appear on the hearing to be equitable and just."

In the *Babcock* case the act (L. 1918, ch. 608) provided: " Jurisdiction is hereby conferred upon the Court of Claims to hear, audit and determine an alleged claim of Dudley P. Babcock   *   *   *   against the State, on account of the following alleged facts [which were then set forth in the act].   *   *   *   If such facts be proven to the satisfaction of the court, *and the court deem it just and equitable* that the claimant should be com-

pensated by the State for such injuries, it may determine the extent of the injuries and allow such claim and such sum as it *deems to be just* and reasonable and render judgment therefor against the State." It was never thought in this case that the State had abdicated its duty by passing along to the Court of Claims the task of deciding for it whether a claim was just and equitable or that it had done more than was constitutionally required in the way of leaving to that court the right to audit and allow the claim if it should decide that the facts did indeed make it a just and equitable one.

In the *Munro* case the important argument made against the award of judgment in favor of the claimant was that the Legislature had gone farther than it was permitted to in the way of allowing a claim and had not left to the Court of Claims the power to pass upon its merits as a moral obligation. Although this contention was over-ruled it doubtless suggested a danger which has been in the minds of the Legislature in passing subsequent statutes and has found expression in such language as is used in the present statute and whereby this power of auditing and allowing is in unambiguous terms left to a tribunal other than the legislative body.

The rule that it rests solely with the State through its Legislature to determine whether it will recognize a claim even though founded upon equity and justice and allow it to be developed into a legal demand and that the exercise of this choice cannot be delegated to any one else, quite necessarily leads to the other rule that the exercise of this discretionary power by the State is seldom subject to review by the courts. (*Oswego & Syracuse R. R. Co. v. State*, 226 N. Y. 351; *U. S. v. Realty Co.*, 163 U. S. 427, 444.) Except under the most extreme circumstances, the courts are not allowed to set up their judgment against that of the State and say that the decision of the latter that it will give recognition to such a claim ought to have been different. Practically

the sole power of the courts in this respect is to determine whether all of the facts established in a given case and presumably within the knowledge of the Legislature do establish such a foundation of equity and justice that the Legislature within the rules established by the courts was authorized, if it saw fit so to do, to recognize the justice of the claim. This rule is necessarily to be implied from all of the decisions on this subject and recognition of it is especially perceptible in the decisions rendered in the cases of *People* v. *Westchester County National Bank* (231 N. Y. 465) and *Babcock* v. *State of New York* (*supra*). The decision of the courts, therefore, that a claim does not possess the elements of a moral obligation and that the Legislature could not acknowledge it is the determination of a question of law and reviewable and we pass to the question whether the facts in this case did establish such a claim and justify recognition by the State of the obligations held by plaintiff. We think that they did and that it was error to hold otherwise.

The State approved and started on its disastrous course the improvement plan which has become the source of so much trouble. It did not as it might have done proceed itself to carry out the plan and provide for its expenses by direct appropriation. It committed the duty of prosecution to an agency composed of State officials and authorized this body to procure money by the sale of bonds and certificates. The legislation provided for the promised payment of these obligations by proposed assessments on the area which was to be benefited. The agency of the State acting under its authority and in a manner which was fairly incidental to the powers conferred upon it represented that the value of the benefited lands would be ample to sustain assessments with which to pay the obligations which were issued. The State authorized itself to be charged with such sums as might not be assessable against individual

owners and municipalities, but the Commission erroneously refrained from making such charge on the theory that the other sources of revenue would be sufficient to pay the obligations which they were issuing and selling to the public.  The proceeds of the obligations were paid to the State, which either still holds them or has expended them upon this project.  The plan as an entirety has collapsed and the sources of revenue which it was represented by officers and agencies of the State would be ample for the payment of plaintiff's obligations have largely vanished.  It is not necessary to say that as between private individuals the one purchasing these obligations would have a cause of action to recover his moneys as procured from him by reason of misrepresentation nor to say that in some other form of contract it would be held that there had been such an utter lack of consideration that the person paying his money would be legally entitled to recover it back.  It is sufficient, in connection with the other facts, that the State has permitted one of its agencies to gather into its treasury moneys of its citizens with assurance of repayment under a plan indorsed and put forth by it, but which, owing to its inherent defects, has lamentably failed with threat of resultant loss of the moneys which were thus invested.  Those facts in our opinion within the principles of cases already cited do not permit it to be said, as matter of law, that the State is without any moral responsibility for what has happened and that it must stand unresponsive when asked to relieve those whom indirectly at least it has brought into an unhappy predicament, by retiring obligations which in essence and equity are its own.  We find it quite difficult to believe that an honorable business man would not suffer considerable moral discomfort if he should refuse to recognize claims to reparation for losses for which he was so substantially responsible as is the State for the present claims and, in such a matter, standards of good conduct

ought not to be less conscientious in the case of the Commonwealth than in that of one of its citizens.

Of course it is unnecessary to consider at length the suggestion now made that these bonds are not a legal obligation of the State. If they were there would be no need for this controversy. The very fact that they are not such legal obligations brings into play the theory of moral obligation which is being invoked by the plaintiff and which has been recognized by the State.

Holding that the bonds and certificates owned by claimant are based upon a moral consideration we come to the special argument that the amount of $27,964.47 paid by claimant on the tax sale of premises supposed to be subject to tax liens on account of this improvement stands on a different basis and does not constitute an equitable obligation. We think that it is covered by the same general principles as the other obligations and constitutes a claim which the State could recognize as a moral obligation. The claimant paid this amount on a tax sale which was supposed to be based upon lawful and binding assessments on account of this improvement. It was so represented by State officials and the claimant acted on their advice in bidding off the property and a large portion of the money was applied to the payment of bonds or certificates. Subsequently it was held that none of the purported tax liens were valid with the exception of a small sum of $813.21 assessed upon lands whose owners did not join in the attack upon the assessment and thus there was a breakdown of the entire assessment scheme upon which, as a purportedly valid one, the State had taken the claimant's money. Certainly, under those circumstances, the State could say that equitably and fairly it ought to return the moneys for which no substantial consideration had been received and not insist upon compelling claimant to attempt to enforce its certificate for an insignificant amount against landowners who, so far as appears, are still free to attack the assessment.

The suggestion by the Court of Claims that if such repayment is made claimant then will have both the moneys which it paid and the tax certificate which was issued to it is sufficiently answered by the fact that this certificate has been tendered to the State and is now subject to recapture by it and that on repayment of claimant's bid the State presumably will be invested with and welcome to any of the illusory rights which it has been thought the claimant secured.

And finally it seems to be reasoned by the Court of Claims in its findings that because owners of a certain amount of land of an aggregate value less than the amount of outstanding obligations on account of this improvement and held to have received an aggregate benefit of $41,479.45 have not been released by any decision of the courts from liability for such benefits, some equitable amount should be collected from time to time on account of such benefits before recourse to any obligation of the State and that, therefore, a judgment for plaintiff's claims should not now be awarded. While there may be some justice in this theory it seems to us that there would be much legal difficulty in an attempted application of it. It was the duty of the Commission, failing to charge any cost of the improvement against municipalities or the State, to assess the total cost upon individual owners. It is conceded that the assessment of the total cost upon the landowners last mentioned would amount to confiscation and ought not to be made and I see no way in which an assessment of an equitable amount may be made against a few owners who have still been left in the plan. It seems to be a case of "all or nothing." But without attempting to decide the various questions which might arise under the theory mentioned, we again do not think that the State was compelled to adopt it and insist, as an excuse for refusing relief, that an effort should first be made by claimant to enforce this imperfect and discredited plan adopted under its authority against a few

out of many property owners who have been less agile than their neighbors in making an escape from its inequitable obligations but who, it is fair to assume, would not now submit to the visitations of the tax collector without appropriate resentment and litigious resistance.

These views, of course, lead to the conclusion that the judgments dismissing the claim herein should be reversed and, since there is no dispute concerning the amount of such claim, and claimant's bonds, certificates and tax certificate have been deposited in escrow to become the property of the State on entry of a judgment in favor of claimant for the amount thereof, judgment should be directed in favor of claimant for the amount of its claim including interest upon the amount paid upon the sale represented by the tax certificate from the date of payment, with costs in all courts.

CARDOZO, POUND, CRANE, ANDREWS and LEHMAN, JJ., concur; MCLAUGHLIN, J., concurs in result.

Judgment accordingly.