(28 Misc. Rep. 378.)

## In re JENSEN.

(Supreme Court, Special Term, Kings County. July, 1899.)

1. CONSTITUTIONAL LAW — DUE PROCESS OF LAW — CLAIMS AGAINST CITY — NOTICE.

Laws 1899, c. 700, § 1, providing that any city official who shall have been successful in any trial commenced within such city, in which it is sought to convict him of any crime in connection with his official duties, may apply to a justice of the supreme court for the appointment of a referee to determine as to his claim for reasonable counsel fees and expenses incurred, and the referee shall report his determination to the justice, and, on confirmation of the report, the claim shall be audited by the referee; and section 4, providing that the several boards in the several counties having respective charge of the annual expenditures of the several cities for which they have been selected shall cause to be included in the taxes to be levied for the year following the audit an amount sufficient to pay bonds issued in anticipation of the collection of such taxes to pay the claims allowed and audited,—are unconstitutional, as no notice to the city is provided for, being in violation of Const. art. 1, § 6, declaring that no person shall be deprived of life, liberty, or property without due process of law.

**2. SAME—DEBT FOR CITY PURPOSES.**
      The act is also unconstitutional as an indebtedness is incurred against
      the city for a purpose other than a city purpose, being in violation of
      Const. art. 8, § 10, declaring that no city shall be allowed to incur an in-
      debtedness except for city purposes.  ·

Application by A. Lawrence Jensen for the appointment of a referee to hear, examine into, and report concerning petitioner's claim. Denied.

F. E. Crane and J. D. Bell, for petitioner.
Luke D. Stapleton, for city of New York.

MADDOX, J.   Petitioner was chief clerk of accounts in the office of the comptroller of the late city of Brooklyn, under bond for the faithful performance of his duties, and was continued in such position in the department of finance of the city of New York after the consolidation of the cities and municipalities now forming said greater city, until subsequent to his indictment, on March 25, 1898, for a felony, under section 48 of the Penal Code, in having accepted a bribe or gratuity for the performance of an official act.   After trial under that indictment, he was, on May 15, 1899, acquitted of the crime charged by the verdict of the jury, and he now seeks to be reimbursed by the city of New York for his counsel fees and expenses paid and incurred in his defense, and, pursuant to chapter 700, Laws 1899, upon notice to said city, has applied for the appointment of a referee to pass upon and examine into his claim. The act referred to, so far as it relates to the questions here presented, provides:

"Section 1. Any official or officer of any city  *  *  *  who shall have been successful in any trial  *  *  *  commenced within the city,  *  *  *  for which such official or officer was appointed,  *  *  *  in which it is sought to convict him of any crime in the performance of, or in connection with his official duties may, within three months after the passage of this act, apply to a justice of the supreme court  *  *  *  holding a special· term for hearing  *  *·*  motions in the judicial district in which such trial  *  *  *  was commenced, for the appointment of a referee to hear, examine into and report concerning the claim of the officer, or official, against the city  *  *  *  in which the trial  *  *  *  against such officer, or official, was commenced,·arising out of reasonable counsel fees and expenses paid or incurred by such officer or official.  The justice  *  *  *  shall appoint a referee who shall hear and examine into such claim and report his determination to the justice of the judicial district who shall hold a special term as aforesaid.   If the court shall confirm the report of the referee, the claim shall be audited by the said referee upon receipt of a certified copy of the order of confirmation."

"Sec. 3. The claims of the respective claimants under section one of this act must be filed with the referee  *  *  *  within one month after the appointment of such referee, all claims to be in writing, verified, and to contain the items of counsel fees and necessary expenses paid or incurred by the successful party."

"Sec. 4. The several boards in the several counties of this state having respective charge in making up the annual expenditures of the several cities  *  *  *  for which they have been selected, are hereby respectively authorized and directed to cause to be included in the taxes to be levied for the year following the audit made under section one of this act upon the estates subject to taxation in the respective cities  *  *  *  in which such claims are audited, an amount sufficient to pay revenue bonds directed by the officer of 'such city  *  *  *  empowered to issue such·revenue bonds in anticipation of the collec-

tion of such taxes, with interest due, or to become due thereon, for the purpose of the payment of the respective claims allowed and audited by the several and respective referees who shall have audited the respective claims."

It will thus be seen that the applicant may proceed ex parte, and that no provision is made requiring notice to be given to the city of the application for the order appointing the referee, nor of the hearing and proceedings before such referee, nor of the application for the confirmation of his report, nor of hearing or proceeding upon the audit of such claim, after such confirmation. And after a claim being so audited, not by an officer or employé of the city, but by a referee so to be appointed by a supreme court justice, the payment thereof must be provided for by including in the tax levy of the city for the next succeeding year an amount sufficient to pay revenue bonds, and interest thereon, to be issued by the comptroller (and by section 187 of the charter he has power to issue revenue bonds) in "anticipation of the collection of such taxes * * * for the purpose of payment of the respective claims allowed and audited." (See section 4 of act.) In other words, after that amount has been so included in the tax levy, then the comptroller must issue revenue bonds for the payment of such claims so allowed and audited. The constitutionality of this act having been attacked, we are thus called upon to determine whether its enactment was a valid exercise of legislative power, or whether it is violative of some constitutional provision. Every intendment is in its favor, and to be held to be in contravention of the constitution it "must plainly be at war with the fundamental law." People v. Terry, 108 N. Y. 7, 14 N. E. 815. The term "person" in the constitutional provision for the protection of life, liberty, and property relates to municipal corporations in their private capacity (10 Am. & Eng. Enc. Law [2d Ed.] 298), and such a corporation has the right, for the protection of its property, to avail itself of all the rights and remedies afforded to an individual (City of Buffalo v. Bettinger, 76 N. Y. 393; Woods v. Board of Sup'rs, 136 N. Y. 411, 32 N. E. 1011). Due process of law implies notice, and a hearing, or an opportunity to be heard; and this is not required, or yet provided for, by the act in question. True, notice of this application has been given, but the test is not what has been done under the act, but what may be done thereunder; and consequently a claimant may proceed to and include the audit of his claim without giving notice to the city. To be permitted so to do, and thereupon to compel the issuance of revenue bonds for the payment of such claim, would, in my opinion, deprive the city of its property without due process of law.

Again, there is the constitutional inhibition against the city giving money or property to or in aid of an individual, and also against the city incurring any indebtedness except for city purposes. Article 8, § 10. Can it be said that the issuing of revenue bonds "for the purpose of the payment of the respective claims allowed and audited," as provided for by said act, would be for a city purpose? True, the bonds are to be issued in anticipation of the collection of the taxes, and the amount of the bonds are included in the tax levy. As said in Bush v. Board, 159 N. Y. 216, 53 N. E. 1121:

"The power to impose taxes, general or local,. which rests with the legisla-
ture, is without express restriction in the constitution, and yet even this power
cannot be said to be absolute. On general principles it has at least one limita-
tion, and that is that the money to be raised must be required for some purpose
that in some sense, at least, can be said to be public. The legislature cannot
authorize taxation for the purpose of making gifts or paying gratuities to pri-
vate individuals."

As also said in that case, so here, the individuals for whose bene-
fit the act was passed have no claim, legal or equitable, against the
city where the money is to be raised by taxation. There is, so far
as I have been able to find, no judicial definition of the phrase "city
purposes" except as to certain specified purposes, and that in Sun
Printing & Publishing Ass'n v. City of New York, 152 N. Y. 264,
46 N. E. 499, the court says:

"Generally, we think, the purpose must be necessary for the common good
and general welfare of the people of the municipality, sanctioned by its citi-
zens, public in character, and authorized by the legislature."

Can the purpose here to be subserved be considered public in char-
acter, or necessary for the common good and general welfare of
the taxpayers of the Greater New York? Can it be said to be sanc-
tioned by the citizens of the city? The only answer to both ques-
tions, in my judgment, is, "No," and the real purpose is seemingly
plain and clear,—to make gifts to those who have, by their conduct
in official life, and in the performance of official duty, invited the
attention of a grand jury of the vicinage from time to time.

In view of the conclusion I have reached as above expressed, the
consideration of the other questions presented upon the argument
is made .unnecessary. I have intentionally refrained from consider-
ing the validity of the remainder of the statute,—that which applies
to the state,—since that question was not before me, and I express
no opinion thereon. "The court should never hesitate to interpose
the barrier of its judgment against the operation of laws which
distinctly contravene constitutional rights" (People v. Warden of City
Prison, 144 N. Y. 535, 39 N. E. 688), and, sections 1, 3, and 4 of the
act in question being violative of section 6 of article 1 and of sec-
tion 10 of article 8 of the constitution, the motion for the appoint-
ment of a referee is denied.