(28 Misc. Rep. 748.)

## In re FALLON.

(Supreme Court, Special Term, New York County. August 22, 1899.)

1. CONSTITUTIONAL LAW—PUBLIC MONEYS—APPROPRIATION.
   Laws 1899, c. 700, providing that city and county officials who have been wrongfully subjected to proceedings either for removal from office or for malfeasance in office shall be allowed the expenses incurred in such proceedings, and providing for the determination of these claims by reference, is unconstitutional, as being an appropriation of public money for private uses.

2. SAME.
   The act is also unconstitutional as a delegation of legislative authority to a nongovernmental agency.

Motion by John J. Fallon for a reference to audit a claim against the city of New York. Denied.

Charles J. Patterson, for the motion.
John Whalen and Chas. Blandy, opposed.

McADAM, J. The petitioner moves for the appointment of a referee, under chapter 700 of the Laws of 1899, to hear, examine into, and report concerning his claim against the city of New York for expenses incurred in procuring his reinstatement to the position of warden of the Tombs, from which he was improperly removed by the then commissioner of correction of the city of New York. The corporation counsel, in opposition, insists that the act is unconstitutional and void, and demands that it be so declared. Granting the application would be to uphold the act, so that the question of constitutionality is presented in a form that requires it to be passed upon by this court before it can exercise any jurisdiction whatever under the act challenged. The statute has already been declared unconstitutional by Mr. Justice Maddox on a similar application made by one Jensen at the Kings county special term (28 Misc. Rep. 378, 59 N. Y. Supp. 653), and that decision should control in this instance unless there are good reasons for disregarding it. The court has examined the act with care. None of its kind, as broad as this one is, has ever appeared upon the statute book. In former years applicants for equitable relief of this character appeared before the legislature, presented their claims, and those that were reported favorably by the committee to which they were referred were again considered by both branches of the legislature, and if approved by them jointly, and sanctioned by the executive, the particular claims so approved were by special enactment referred to the proper board of the city or county for audit. In those cases the representatives elected by the people, and intrusted with the taxing power, thus determined in a manner sanctioned by long-established usage, if not by direct constitutional authority, that the particular claims so approved were proper subjects for the exercise of the taxing power by the state. Even this power has not gone unchallenged. In the recent case of Stemmler v. City of New York, 34 App. Div. 415, 54 N. Y. Supp. 292, the appellate division said of such a special enactment, "The constitutionality of this act is not free from doubt." The

act of 1899 is far more objectionable, for by it the legislature, without examination of any of the claims, attempts to delegate its legislative authority upon the subject, as if the allowance of such claims, though involving large amounts, was a mere perfunctory duty, that could as well be performed by others. The act directs that a referee be appointed by the court to audit the claims of all who come within its provisions and claim the benefit thereof, and section 4 provides that: .

"The several boards in the several counties of this state having respective charge in making up the annual expenditures of the several cities or counties for which they have been selected, are hereby respectively authorized and directed to cause to be included in the taxes to be levied for the year following the audit made under section 1 of this act upon the estates subject to taxation in the respective cities or counties in which such claims are audited, an amount sufficient to pay revenue bonds directed by the officer of such city or county empowered to issue such revenue bonds in anticipation of the collection of such taxes, with interest due, or to become due thereon, for the purpose of the payment of the respective claims allowed and audited by the several and respective referees who shall have audited the respective claims."

The persons for whose benefit the act was passed have no legal claims against the city or county, and the purpose of the act is to have the finding by referees to the effect that these claims are equitable in character and reasonable in amount a sufficient warrant in law to compel the taxpayers of the different counties to pay the sums awarded, or, in default thereof, that their property be sold to meet the demands. This clearly means the taking of private property, not for public use, but for the benefit of private individuals, and is expressly prohibited by the state constitution. The court of appeals, in Bush v. Board, 159 N. Y. 212, 213, 53 N. E. 1122, said of an act not so objectionable:

"The power to impose taxes, general or local, which rests with the legislature, is without much express restriction in the constitution, and yet even this power cannot be said to be absolute. On general principles, it has at least one limitation, and that is that the money to be raised must be required for some purpose that in some sense, at least, can be said to be public. The legislature cannot authorize taxation for the purpose of making gifts or paying gratuities to private individuals. It is quite clear that this was the purpose of the act in question. The individual for whose benefit the tax was to be levied under the act had no claim, legal or equitable, against the town or county where the money was to be raised by taxation. Those who actually served under the conscription only discharged their obligations to the general government. Those who commuted simply paid so much money in order to be relieved from the obligation to render military service. In either case the individual did nothing more than to discharge his obligations to the government as a citizen, and hence he had no claim against the locality to reimburse him for what he was obliged to do. The fact that a majority of the taxpayers requested the supervisors to levy the tax is of no importance. Majorities, however potent in many respects, have no power to impose taxes upon the minority for the purpose of raising money to be devoted to gifts or gratuities to individuals. We think that, under the general principles which control the exercise of the power of taxation, the legislature had no power to pass the act in question. It did not attempt to authorize taxation for any public purpose, but was, in effect, a method of taking private property, not for any public use, but for the benefit of private individuals. Legislation of this character has often been questioned in the courts, and quite uniformly condemned."

True, the report of the referee is to be confirmed by the court before it becomes final; but, as the questions to be submitted to the

referee are exclusively of fact, it is at once evident that but few, if any, cases would arise where the findings could be disturbed. Indeed, it is much like a reference to compute the amount due in a foreclosure case, in which the report of the referee is almost as of course confirmed. Judge Cooley announced many years ago that "public office is a public trust," and the responsibilities and trusts devolving upon the legislature cannot be delegated to a referee, or even a judicial tribunal, for in our system of government the executive, legislative, and judicial branches were made and intended to be kept separate, each acting as a check upon the other. So that, even assuming that the legislature has power to pass special enactments in such matters, as it has done in the past, it cannot by a general bill confer the power upon others. For these reasons, and those so ably expressed by Judge Maddox in his opinion, the motion must be denied upon the ground that the act under which the application is made is wholly unconstitutional and void.