LOUIS A. CUVILLIER, Claimant, *v.* THE STATE OF NEW YORK,
Defendant.

(Claim No. 18514.)

Court of Claims, May 24, 1928.

**State — claims against — claim for legal expenses incurred in defense of charge of libel made against claimant while member of State Assembly — Laws of 1927, chap. 711, conferring jurisdiction on Court of Claims to hear and determine claim, violates State Constitution, art. 8, § 9, which prohibits use of State funds for private undertaking.**

Chapter 711 of the Laws of 1927, conferring jurisdiction on the Court of Claims to hear, try and determine claimant's claim for counsel fees and expenses incurred by him while a member of the State Assembly in defending a charge of criminal libel preferred against him before a magistrate of the county of New York, and to render judgment therefor, is unconstitutional, in that it violates section 9 of article 8 of the State Constitution, which prohibits the use of State funds for a private undertaking.

There is no obligation on the part of the State, legal, moral or equitable, to pay claimant for expenses incurred by him, and, while he was a member of the Assembly at the time, he, like any other citizen, must bear his own burden of defending himself.

Furthermore, claimant never successfully defended himself against criminal libel, for the reason that the information lodged against him was in an improper jurisdiction and before a court that could not pass upon the question involved; the granting of a writ of habeas corpus by which the claimant was released determined nothing as to whether or not the crime charged had or had not been committed.

PARSONS, J., dissents, in opinion.

CLAIM for legal expenses incurred in defense of charge of criminal libel made against claimant while member of the Assembly in 1923.

*John D. Lindsey,* for the claimant.

*Albert Ottinger, Attorney-General [Frederick D. Colson, Deputy Assistant Attorney-General,* of counsel], for the defendant.

POTTER, J. The claimant asks this court to allow and award to him the legal expenses he incurred in defending himself on a charge of criminal libel lodged against him while he was a member of the Assembly of the State in 1923. The claimant introduced a bill in the Assembly providing for a legislative investigation of the police department of the city of New York, and sent from Albany a telegram, the basis of the charge of criminal libel against him, to one Corrigan, a magistrate of New York city. The purpose of the telegram was to solicit support of claimant's bill in the Legislature. Growing out of this telegram a charge of criminal libel was preferred against the claimant by the then police commissioner of the city

of New York. The claimant was thereon restrained under the proceedings from May 9, 1923, to December 10, 1923, when he was released by virtue of a writ of habeas corpus issued by the Supreme Court on the sole ground that the committing magistrate of New York city was without jurisdiction to act, that the crime, if any was committed, was in the county of Albany, the place from which the telegram was sent. That being so, the latter county was the proper place to lodge the information and have a determination made. No further action has been taken in the premises and no determination has ever been made by any court having the power so to do to determine whether or not the crime of criminal libel was committed.

This claim comes to this court under chapter 711 of the Laws of 1927. If the act is a valid exercise of legislative powers, it leaves but little for this court to do but to determine the amount of counsel fees and expenses incurred by claimant in the charge brought against him for criminal libel and from which he was released under a writ of habeas corpus upon the sole ground that the prosecution for the crime was not brought in the proper county. I am of the opinion that the enabling act, chapter 711 of the Laws of 1927, is unconstitutional, being a violation of article 8, section 9, of the Constitution, which prohibits the use of State money for a private undertaking.

In taking up this matter it would seem that what the courts have done in two instances at least in similar legislation should be considered.

In 1899, by chapter 700, providing for the appointment of a referee " to hear, examine into and report " the amount of reasonable counsel fees and expenses paid or incurred by a city or county officer in successfully defending himself in any trial or proceeding " to remove him from office * * * to convict him of any crime " alleged to have been committed " in the performance of, or in connection with his official duties," and that the amount allowed by the referee, when confirmed by the court, be paid by the issue of revenue bonds to be included in the taxes levied for the following year in the city or county affected.

This act was held to be unconstitutional in every court in which its validity was contested, the courts holding that it was a violation of article 8, section 10, of the State Constitution, which provides: " No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes.

* * * " (*Matter of Straus*, 44 App. Div. 425; *Matter of Jensen*, 28 Misc. 378; affd., 44 App. Div. 509; *Matter of Chapman* v. *City of New York*, 57 id. 583; *Matter of Fallon*, 28 Misc. 748; *Matter of Labrake*, 29 id. 87. See, also, *Matter of Chapman* v. *City of New York*, 168 N. Y. 80.)

In the *Jensen* case in the Appellate Division, the opinion of the court written by Judge WILLARD BARTLETT, and from which I am quoting freely, lays down certain principles in relation to the proper expenditure of the moneys of a municipality and how they can be used. The court says: " In the case of the petitioner, and other officers similarly situated, there was no obligation whatever, legal, equitable or moral, on the part of the State or any municipality in the State, to pay to the acquitted individual the expenses which he had sustained by reason of being subjected to an unsuccessful prosecution for official misconduct. In the criminal courts of this State hundreds of persons every year are found to be not guilty of the crimes with which they are charged; yet no one, so far as I know, has ever seriously proposed that the State should reimburse all these acquitted persons for the expenses to which they have been put in obtaining exoneration. The hardship of being subjected to a criminal prosecution is, of course, generally recognized where the acquittal is based on the innocence of the accused. In many instances, however, the acquittal has nothing to do with the merits of the case, as for example, where there is a failure of proof owing to the absence of a material witness, or where the Statute of Limitations is successfully pleaded. But even in cases of established innocence, the view which has thus far prevailed has been that he who is criminally prosecuted with apparently good cause must bear the burden of his own defense as a part of the price he pays for the protective influence of our institutions of government. And so it happens that it is only when the prosecution is instituted without adequate reasons and with malice, that the law permits him to charge those expenses upon the person who has wrongfully charged him with crime. The sense of hardship of which I have spoken, however, has never heretofore so impressed itself upon the community as to be regarded as raising an equitable claim against the State for the reimbursement of their expenses on the part of acquitted defendants generally in criminal cases; and it is impossible to perceive any distinction in favor of officers prosecuted for official misconduct which should give rise to a moral obligation in their case not existing in favor of non-official defendants."

The *Chapman* case was taken to the Court of Appeals and that court concurred with the holdings of the court below that the act was unconstitutional. (*Matter of Chapman* v. *City of New York*,

168 N. Y. 80.) Judge VANN, who wrote the opinion for the Court of Appeals, says: "While other questions have been discussed before us, the main question is whether the Legislature had power, under the Constitution of our State, to pass this statute. That question has been passed upon several times by the Supreme Court, and the conclusion reached by every judge who considered it is that the statute is unconstitutional. (*Matter of Straus*, 44 App. Div. 425; *Matter of Jensen*, 28 Misc. 379; affd., 44 App. Div. 509; *Matter of Chapman*, 57 App. Div. 583; *Matter of Fallon*, 28 Misc. 748; *Matter of Labrake*, 29 Misc. 87.) Our examination has led us to the same result, and, as the discussion of the subject has been so thorough and able in the courts below, it is necessary for us to do little more than announce our conclusion.  *   *   *

" In the case before us, however, no benefit was conferred upon the city, and there was never a legal or moral obligation on the part of the city to pay the claim in question. For time out of mind, in all governments where the common law prevails, a person prosecuted for crime has been compelled to pay his own expenses when he had the means of doing so. (*People ex rel. Brown* v. *Bd. of Supers. Onondaga Co.*, 4 N. Y. Cr. 102; affirmed, 102 N. Y. 691.)  *   *   *  The proceeding instituted against the appellant was not a prosecution for crime, but to discipline or remove him for misconduct as a public officer. There was no authority, statutory or otherwise, to appoint counsel to defend him, and no attempt was made to do so. It was necessary for him to employ and pay his own counsel, as has always been the case with others similarly situated. Payment of his expenses by the public would be a mere gratuity, and without the sanction of custom or precedent. There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office he assumes the risk of defending himself against unfounded accusations at his own expense. Whoever lives in a country governed by law assumes the risk of having to defend himself without aid from the public, against even unjust attempts to enforce the law, the same as he assumes the burden of taxation.  *   *   *  Asking for aid to pay the expenses of a defense already made from one's own resources, is like asking for aid in the payment of taxes or the discharge of any public burden. It is not a city or county purpose, but a mere gift.  *   *   *

" Tested by these definitions, and we find none more liberal, payment of the appellant's claim, which arose nearly three years

before the statute in question was passed, is not a city or county purpose. His defense was for his own benefit, not for the benefit of the city. It was a private matter of his own, the same as if he had been sued by the city in an action at law, and had succeeded in his defense. As we have seen, there was no legal liability or moral obligation on the part of the city to pay his expenses, which were not necessary for the common good and general welfare of the municipality, nor public in character, nor, so far as appears, sanctioned by its citizens. It was in no sense a meritorious claim from the standpoint of public interest or good government, nor one the payment of which is sanctioned by the history of legislation or the acquiescence of the people. He made an unprecedented demand, and its novelty, when the numerous opportunities for the presentation of such claims for time out of mind are considered, is almost a demonstration that it was not incurred for a public purpose. While vast numbers of people during the history of the State have had claims similar in principle, seldom, if ever before, has one been bold enough to ask for legislation such as that under consideration."

The Court of Appeals, referring to the *Chapman* and *Jensen* cases, recently said: "In those cases no legal or moral wrong was committed by those who prosecuted the charges." (*Farrington* v. *State*, 248 N. Y. 112.)

Twenty-four years later than the act of 1899 which we have considered above, an act was passed and became chapter 758 of the Laws of 1923.

It authorized the board of estimate and apportionment of the city of New York to audit the expenses, including counsel fees, paid or incurred by one Dominick Henry in successfully defending himself in any criminal action in the years 1920 and 1921 either upon a trial or other disposition of the indictment, in which it was sought to convict him on account of acts or omissions as an officer of the police force of the city of New York, the amount so audited to be paid by the comptroller out of the sale of special revenue bonds, the bonds to be redeemed the next year by a levy of taxes sufficient to meet them.

The validity of the statute was raised in the case of *Schieffelin* v. *Henry* (123 Misc. 792) and Mr. Justice McGOLDRICK in an opinion held the act unconstitutional and cited for his authority for so doing *Matter of Chapman* v. *City of New York* (168 N. Y. 80) and *Matter of Jensen* (44 App. Div. 509). That decision was unanimously affirmed without opinion by the Appellate Division (215 App. Div. 706) and by the Court of Appeals (242 N. Y. 581).

There is no difference in principle under chapter 711 of the Laws of 1927, than that involved in the two statutes above referred to

and which the courts held void as being unconstitutional, except that in the two statutes above mentioned it was city money which was being dealt with and in the case before us it is State money. In the first two instances, the statutes violated article 8, section 10, of the Constitution in that the court held that the payment of expenses incurred by officials either in proceedings to discipline them or remove them from office or in defending themselves against criminal charges was not a city purpose.

In the statute in question involved in this case it is State money, and the Constitution in article 8, section 9, prohibits its use for a private undertaking.

There was no obligation on the part of the State, legal, moral, equitable or in the interest of good government, to pay claimant for expenses incurred by him in defending himself from a criminal charge. While he was a State official, he, like any other citizen, must bear his own burden of defending himself and not ask that the public assume it.

His duties as a State official, however important they were, did not in any sense require of him the doing of an act which was criminal. If he did a criminal act, that was outside the scope of his duties as a State official and one for which he must answer the same as any other citizen. This act so far as it authorizes this court to ascertain the amount of expenses incurred by him in ridding himself of a criminal charge and pay him up to not exceeding $15,000, is beyond the constitutional power of the Legislature. All the reasoning in the cases above cited applies with equal force to the statute here involved, and it seems to me is decisive on the constitutionality of the act of 1927, chapter 711.

There are two other questions involved in the enabling act (Laws of 1927, chap. 711), however, that should be considered.

*First,* did the claimant successfully defend himself against the charge of criminal libel? I am of the opinion that he did not for the reason that the information lodged against him was in an improper jurisdiction and before a court that could not pass upon the question involved. For that reason the claimant was released under a writ of habeas corpus on the sole ground that if a crime had been committed it was committed in Albany county, the place from which the telegram was sent. The granting of this writ determined nothing as to whether or not the crime charged had or had not been committed. It seems to me that the claimant has never successfully defended himself against the charge of criminal libel, for I take it that for a person to successfully defend himself on a criminal charge means a charge or information lodged in a proper jurisdiction and before a court that can make a final adjudi-

cation on the charge in question and an acquittal on that charge. This has never been done in this case.

In *Williamsburgh Savings Bank* v. *State* (243 N. Y. 231) the Court of Appeals held that the Legislature by the passage of an enabling act recognized a moral obligation. This the Legislature has power to do and it then remains for the court, if the question is raised, to determine if the claim possesses the elements of a moral obligation and as Chief Judge HISCOCK writes (p. 241): " The decision by the Legislature that certain facts create a moral obligation, even if those facts exist, is not conclusive. The courts will still be called upon to decide whether its judgment was correct."

The act in this case (Laws of 1927, chap. 711) seeks to make a liability against the State by providing " * * * the amount of said counsel fees and expenses so paid by him, shall constitute a legal and valid claim against the State, and the court may award to and render judgment for the claimant." The trouble is that the act attempts to create a liability of some kind where none has ever existed. I am aware that the courts have recognized and authorized payments in cases where no legal liability existed, but in such cases there was at least a moral or equitable obligation which it seemed fair and just should be discharged by the State. There are many such instances. The State acting under legislative enactment, however, is not prevented from recognizing claims founded on equity and justice though they are not such as could have been enforced in a court of law if the State had not been immune from suit (*Munro* v. *State of N. Y.*, 223 N. Y. 208); where beneficial services have been performed for the State (*Cole* v. *State of N. Y.*, 102 id. 48); where property was furnished to the State (*O'Hara* v. *State of N. Y.*, 112 id. 146); where the State sold lands and received the purchase price therefor and the title thereafter proved defective (*Wheeler* v. *State of N. Y.*, 190 id. 406), or where work was done, the expense of which in equity and justice the State should bear (*Lehigh Valley R. R. Co.* v. *Canal Board*, 204 id. 471). These cases show what is meant by a moral obligation, and in each case some direct benefit was received by the State.

The cases referred to above show what constitutes a moral or equitable obligation and where payments have been authorized by the State. There are many others in addition.

In the instant case there never was any obligation of any kind upon the part of the State and nothing out of which one could be predicated.

The law as pointed out and laid down in the *Jensen Case* (44 App. Div. 509, 515) says: " In the case of the petitioner, and other officers similarly situated, there was no obligation whatever, legal,

equitable or moral, on the part of the State or any municipality in the State, to pay [the expenses of the] acquitted individual  *   *   *." Again the court says: " In the criminal courts of this State hundreds of persons every year are found to be not guilty of the crimes with which they are charged; yet no one, so far as I know, has ever seriously proposed that the State should reimburse all these acquitted persons for the expenses to which they have been put in obtaining exoneration." Again in the *Chapman Case* (168 N. Y. 86) the court says: " There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation."

The last two cases and the case of *Schieffelin* v. *Henry* (123 Misc. 792) establish beyond question, in my opinion, that there never was any liability of any description against the State in favor of the claimant.

In conclusion, I hold:

*First.* The enabling act (Laws of 1927, chap. 711) is unconstitutional under article 8, section 9, of the State Constitution.

*Second.* That the claimant never successfully defended himself against the charge of criminal libel.

*Third.* That the claimant never had any legal, moral or equitable claim against the State.

The claim should be dismissed upon its merits.

ACKERSON, P. J., concurs.

PARSONS, J. (dissenting). I disagree and dissent from the opinion and findings of my brothers in this case. This case comes to us for decision under the provisions of chapter 711 of the Laws of 1927 which reads as follows:

"AN ACT to confer jurisdiction on the court of claims to hear, try and determine the claim of Louis A. Cuvillier for counsel fees and expenses incurred by him in successfully defending a certain charge of criminal libel preferred against him before a magistrate of the county of New York, and to render judgment therefor.

" Became a law April 5, 1927, with the approval of the Governor. Passed, three-fifths being present

"*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

" Section 1. Jurisdiction is hereby conferred upon the court of claims to hear, try and determine the claim of Louis A. Cuvillier for counsel fees and expenses incurred by him in successfully defending the charge of criminal libel preferred against him before a

magistrate of the county of New York, by the police commissioner of the city of New York, based on the sending by the said Louis A. Cuvillier, from the city of Albany, on the twenty-second day of April, nineteen hundred and twenty-three, to one of the city magistrates of the city of New York, of a telegram soliciting support to a legislative bill looking to a legislative investigation of the police department of the city of New York; and if the court finds that the said legislative bill was pending in the legislature and that the said Louis A. Cuvillier was a member of the legislature and in attendance thereat at the time said telegram was sent, and that by reason of said charge the said Louis A. Cuvillier was detained and restrained of his liberty from the ninth day of May, nineteen hundred and twenty-three, until said detention and restraint ceased on or about the tenth day of December, nineteen hundred and twenty-three by virtue of a writ of habeas corpus issued by the supreme court, and that said counsel fees and expenses were incurred by said Louis A. Cuvillier in successfully defending himself against said charge of criminal libel and in securing said writ of habeas corpus, the amount of said counsel fees and expenses so paid by him, shall constitute a legal and valid claim against the state, and the court may award to and render judgment for the claimant against the state for such sum as shall be just and equitable, not to exceed, however, the sum of fifteen thousand dollars; provided said claim is filed with the court of claims within six months after this act shall take effect.

" § 2. This act shall take effect immediately."

In the first place, the question of successful defense does not seem to be referred to this court as the act itself declares that he did successfully defend himself, and the Court of Appeals in the case of *Williamsburgh Savings Bank* v. *State* (243 N. Y. 231) in the unanimous decision, uses the following language (at p. 242): " It would seem to be pretty unreasonable to assume that the Legislature conferred upon the courts power to pass upon and give judgment for claims unless it itself had considered and approved their equitable nature." If they had considered and approved the equitable nature of this claim as set forth in that decision, they certainly must have known and considered the facts which constituted the claim and there is no power in this court to review that decision. True, this case held later on that the question of the equity of the case may be passed upon by the court, but a plain, bald question of fact that he had successfully defended himself, in my judgment, is not reviewable by this court or any other court.

Even assuming that that question is for this court to determine, let us see what happened. The claimant was a State officer, a

member of the Legislature, and the Legislature was in session at the time. It had before it a bill which was the subject of a telegram sent by the claimant. Sometime after, he was arrested in New York county for criminal libel by reason of the sending of said telegram. Being a State officer, he thereupon called upon the Attorney-General to defend him and the Attorney-General refused so to do. There was nothing left for the claimant to do but to employ private counsel to defend himself from this criminal charge which he did. There is a serious question in my mind whether, under the circumstances, it was not the duty of the Attorney-General to defend him, but that is beside the case because the Attorney-General refused to defend him and did not defend him. He was defended by private counsel and was discharged upon a writ of habeas corpus and nothing further was ever done in reference to said matter and the Statute of Limitations for the prosecution of the crime, if any were committed, has long since passed. I cannot imagine of any more successful defense. The enabling act does not require that he be acquitted by a verdict. It simply states that he successfully defended himself, which, in my opinion, he did.

In my opinion, after his discharge as a result of the writ of habeas corpus, it is a fair inference that the prosecution decided that even if the telegram was libelous, this State officer and Assemblyman was protected by his constitutional privilege against being called to account for what may be said by him in debate in reference to pending legislation.

In the record some point was made, although not in the opinion or in the findings of the majority, that the telegram was sent from a telegraph office on State street, outside of the Capitol building. I do not believe that that makes any difference. I think he is protected there. The Legislature was in session and the legislation about which he telegraphed was pending. (*Coffin* v. *Coffin,* 4 Mass. 1.) This seems to be the leading case upon the question in which an action for slander was brought by reason of something that a member said outside the halls of the Legislature but during the time that the Legislature was in session and in reference to pending legislation.

I dissent from the opinion and findings of the majority that the enabling act is unconstitutional. The opinion quotes article 8, section 10, of the State Constitution which reads as follows: " No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association, or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation;

nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes.   *   *   * ''

The opinion cites a long list of cases in reference to that. I have no quarrel with them upon that question, but this involves the money neither of a county, city, town nor village, but does involve the money of the State of New York. The only provisions that I can find in the Constitution prohibiting the State from lending its money or credit are contained in article 8, section 9, which reads in part: " Neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking.   *   *   * " and in article 7, section 9, which reads in part: " No extra compensation shall be made to any contractor;   *   *   * "

Surely this cannot be said to come within any of those provisions. This was the defense of a State officer who perhaps had made a mistake in the performance of his duty as such State officer, and no county, city, town or village had anything to do with it and none of the lengthy dissertations upon that provision of the Constitution has any reference whatsoever or any application to the case at bar. Nobody was asking any county, city, town or village to use any of its money in this matter. It was only the money of the State of New York that was to be used, and, in my opinion, the cases cited in the prevailing opinion in this case under that section have absolutely no application whatever to the instant case.

Believing as I do that when Chief Judge HISCOCK in the *Williamsburgh Savings Bank* case used the language that he did, it meant something, and it meant that the Legislature had knowledge of the facts in reference to the instant case.

It seems to me, therefore, that the only question left for this court to decide is whether it was a moral obligation of the State and that it is the only question that this court has any authority to review. In my opinion, in *Williamsburgh Savings Bank* v. *State (supra)*, which is the last pronouncement of the Court of Appeals upon what constitutes a moral obligation, there can be no question in this case. In that case, the Court of Appeals declared the State was morally responsible for the payment of some $400,000 worth of bonds, which upon their face the State never agreed to pay and which upon their face were not obligations of the State, simply because what was then known as the Water Commission made a mistake in the plans of the drainage district and some savings bank bought the bonds.

In the instant case, assuming but not deciding that a State officer in the performance of his duty made a mistake, how are you going

to get away from the decision in the *Williamsburgh Savings Bank* case and many other cases where other State officers made a mistake? If the mistake of the Water Commission in the case of the *Williamsburgh Savings Bank* constituted a moral liability upon the part of the State, then there can be no distinction between the mistake of a State officer, a member of the Assembly, who is protected by the Constitution from responsibility for any written or spoken words in reference to pending legislation.

In my opinion, this claimant successfully defended himself, if that question is at issue, and his expenses constitute a moral obligation, and the Legislature of the State of New York, knowing all of the facts in reference to the matter, had a right to declare that he should recover the amount specified in the act, to wit, $15,000.