Louis A. Cuvillier, Appellant, *v.* The State of New York, Respondent.
(Claim No. 18514.)

Hasbrouck, J. (dissenting): Louis A. Cuvillier, the claimant, was a member of the Assembly of the State of New York in 1923.   There was a session of the Assembly from January until the fourth of May.   On April 9, 1923, claimant introduced in the Assembly a bill providing for a legislative investigation of the police department of the city of New York.   On April twenty-second, on his way to the train during a recess of the Legislature, claimant sent a telegram to Magistrate Joseph E. Corrigan, of New York city, which contained an alleged criminal libel of one Enright, chief of police of the city of New York.   On May ninth Enright laid an information before Justice Crain sitting as a magistrate in the city of New York, charging Cuvillier with that crime.   To the Attorney-General thereupon Cuvillier applied to take up his defense against such charge and the Attorney-General refused.   A hearing was had upon the charge and over the objections of Cuvillier, Magistrate Crain held him to await the action of the grand jury, admitting him to bail.   Thereafter Cuvillier sued out a writ of habeas corpus returnable before Mr. Justice Cohalan who sustained the writ and discharged Cuvillier from imprisonment upon the ground that the New York court had no jurisdiction of the crime.   Thereafter chapter 711 of the Laws of 1927 was enacted conferring jurisdiction upon the Court of Claims to hear, try and determine the claim of Cuvillier for counsel fees.   The trial has been had in the Court of Claims and among other things the court has found as a conclusion of law that the claim does not constitute a moral obligation against the State of New York. The act of the Legislature (Laws of 1927, chap. 711) provides, among other things: " If the court finds that " a, Cuvillier was a member of the Legislature and in attendance thereat at the time the telegram was sent; b, that he was charged with criminal libel and was detained and restrained of his liberty because of such charge; c, that

† Added by Laws of 1922, chap. 671.— [Rep.
‡ Affd., 250 N. Y. 258.

he successfully defended himself against such charge, etc., such facts "shall constitute a legal and valid claim against the State." The bill evidently was drawn in the similar phraseology to bills heretofore considered in the cases of *Munro* v. *State* (223 N. Y. 208) and *Farrington* v. *State* (248 id. 112). The effect of the bill is that when the facts are proved and found to be established and to constitute an obligation legal, equitable or moral, there remains no function in the Court of Claims but to assess damages justly and equitably. (*Williamsburgh Savings Bank* v. *State*, 243 N. Y. 231.) The trial court found that there was no evidence that Cuvillier had successfully defended himself against the charge of criminal libel because it never came to a hearing upon the merits. The vice in that finding is that the claim act only deals with the charge under which he was restrained. When that charge, the particular one lodged before the magistrate, Justice CRAIN, was held illegal in the habeas corpus proceeding and the relator discharged, the legal and actual effect was that the charge had fallen by the effort of the defendant; that he had successfully defended himself from it. The claim act contemplated no other charge than that for which Cuvillier had been prosecuted in the county of New York. That his defense was successful appears from the fact that the grand jury of the county of New York even if it retained the power to consider the charge in the face of the determination of the habeas corpus proceeding (*Swartwout* v. *Dickelman*, 12 Hun, 358; *Hinds* v. *Parker*, 11 App. Div. 327) has failed to exercise it. The crime, if any, was committed April 22, 1923. It was a misdemeanor ■ and for a misdemeanor an indictment *must* be found against persons residing in the State within two years after the commission of such misdemeanor. (Code Crim. Proc. § 142.) The next contention made by the State against the claim is that to indemnify the claimant against expenses sustained by him in defending himself would constitute the making of a gift. (*Babcock* v. *State*, 231 N. Y. 560; *Lehigh Valley R. R. Co.* v. *Canal Board*, 204 id. 471; *People* v. *Westchester County Nat. Bank*, 231 id. 465.) But the contention that the act provided for a gift falls if there rests upon the State any legal or moral obligation to indemnify the claimant. The moral obligation is sought to be established by the appellant that the privilege of the Assemblyman was violated by his imprisonment. The privilege claimed is against criminal prosecution and is founded upon section 12 of article 3 of the Constitution of the State which reads: "For any speech or debate in either house of the Legislature, the members shall not be questioned in any other place." The fact that Cuvillier was a member of Assembly affords him no privilege on a charge of criminal libel against being questioned in another place unless the libel was uttered in speech or debate in either house. While the provision requires a liberal construction there is no authority for extending it outside of the house; beyond "sitting in committee, executing the commission of the house" or "in drafting a report" or "in a convention of both houses, although the convention should be holden in the Senate chamber." (*Coffin* v. *Coffin*, 4 Mass. 1, 28.) The reason for the privilege should be looked for in its nature. It is the privilege of the Legislature and of the member. It is not granted to him for his benefit. It is for the benefit of the people represented by him. They are entitled to the use of his knowledge and convictions upon public matters involved in legislation, and, therefore, the legislator should be required and suffered to express himself with freedom in debate and speech in the house of which he is a member. The privilege

is limited by the Constitution and may not be extended beyond the language of the Constitution and the reasons upon which it is based. When the legislator leaves the house and is out of it the privilege falls. He has no protection against the perpetration of crime when he communicates by speech or writing with his constituents or the public. Speeches and writings upon legislative problems may be vastly beneficial to the public and on the other hand unrestrained, libelous and vituperative speech attacking the character of and defaming individuals made out of the house, could result in vice and oppression. The lawmakers must be held to have sought the welfare not the oppression of the people in adopting the Constitution. Lord ELLENBOROUGH, Ch. J., writing for the Court of Kings Bench upon this subject has said of a member of the Commons House of Parliament: "A member of that house, has spoken what he thought material, and what he was at liberty to speak in his character as a member of that house. So far he was privileged; but he has not stopped there; but, unauthorized by the house, has chosen to publish an account of that speech in what he has pleased to call a more corrected form; and in that publication has thrown out reflections injurious to the character of an individual. * * * Has he a right to reiterate these reflections to the public; and to address them as an *oratio ad populum*, in order to explain his conduct to his constituents? There is no case in practice, nor, I believe, any proposition laid down by the best text writers upon the subject, that tends to such a conclusion." (*The King* v. *Creevey*, 1 Maule & Sel. 273, 278.) Privilege is for the member doing the work of legislation in the house. When he is out of the house, out of its committee, ungoverned by its rules, his privilege no longer obtains. (2 Cooley Const. Lim. [8th ed.] 931; 1 Black. Comm. chap. 2, p. 164; *The King* v. *Wright*, 8 Durn. & East, 293; *The Case of John Wilkes*, 19 Howell's State Trials, 982; *Earl of Shaftsbury*, 6 id. 1270; *The Case of the Seven Bishops*, 12 id. 183; 4 Macaulay's History of England, 25; 1 Story Const. [5th ed.] 609; 1 Kent's Comm. 235.) It follows that the claimant was not within his constitutional privilege when he uttered the telegram alleged to constitute the criminal libel. The question then arises as to whether the Legislature apart from his privilege had the power to indemnify him against expenses arising out of his prosecution for criminal libel while he was in the performance of the duties of his office as a member of Assembly. It is the contention of the State that the cases of *Matter of Chapman* v. *City of N. Y.* (168 N. Y. 80); *Schieffelin* v. *Henry* (123 Misc. 792; affd., 215 App. Div. 706; affd., 242 N. Y. 581) and *Matter of Jensen* (44 App. Div. 509, 517) are in point and deny the power of the Legislature to pass the claim act under review. The decision in the *Chapman* case turned upon the proposition that the attempt of the Legislature to permit the city of New York to indemnify a police officer who had been charged with official misconduct was at war with the Constitution which prohibits any county, city, town or village from incurring any indebtedness except for the purposes of such municipalities. The *Henry* case was similar to the *Chapman* case on the facts and the decision made on the constitutional ground that chapter 758 of the Laws of 1923 was unconstitutional and void because in contravention of section 10 of article 8. The *Jensen* case shows him to have been a chief clerk of accounts in the office of the comptroller of the city of Brooklyn. He was indicted for accepting a bribe for the performance of an official act. The comptroller removed him. On his trial for bribery he was acquitted. He instituted a proceeding under chapter 700 of the Laws of 1899,

to recover the amount of expenditures for counsel fees, etc., in the sum of $2,461.70 incurred by reason of the unsuccessful criminal prosecution against him. The Appellate Division affirmed the Special Term in denying him relief on two grounds: *First*, that the power of taxation could only be used for a public purpose and that Jensen's defense served no public purpose. *Second*, that chapter 700 of the Laws of 1899 was enacted in violation of section 10 of article 8 of the Constitution. The argument in support of the first ground in the *Jensen* case is strongly stated in the *Chapman* case by Judge VANN. " Payment of his expenses by the public would be a mere gratuity, and without the sanction of custom or precedent. There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office he assumes the risk of defending himself against unfounded accusations at his own expense." (*Matter of Chapman* v. *City of N. Y.*, *supra*, 86.) While Judge VANN's language was pertinent to the facts in the *Chapman* case, it ought not to govern the case at bar unless the principle involved be the same. The claimant is not charged with official misconduct. There is a wide distinction between an official charged with a criminal offense involving official misconduct or crime, and service of his personal interests; and a criminal offense committed while the accused is in the very endeavor of serving the public weal—a wide difference between a charge of bribery in committing an official act and a charge of criminal libel in writing to bring about remedial legislation for the benefit of the public. There can be no question but that Cuvillier in the writing complained of was acting as a member of Assembly pursuing no benefit to himself but the public weal. Though charged with crime he must be presumed to have been innocent for he never was convicted. Thus we have the legislator lawfully pursuing his duties put to great expense because of his zeal in the public interest. He was the servant of the State lawfully engaged in the prosecution of its legislative work and because of the manner of doing it he was obliged to expend large sums of money in extricating himself from the mesh of the law. There is a moral involved. The State ought not to permit its dutiful servant prosecuting its highest welfare to be impoverished because of injuries sustained by him in the performance of his duties. In the case of *Cole* v. *State* (102 N. Y. 48, 53) the court says: " But can it be maintained that it would be beyond the power of the Legislature, in special cases, where in its judgment justice and right demanded it, to give power to the Board of Claims to disregard defenses strictly legal? We are unable to find in the Constitution anything which deprives the Legislature of the power of giving to the Board of Claims * * * jurisdiction to hear and determine claims against the State which are founded in right and justice." This power has heretofore been exercised and has the approval of the Court of Appeals. The case of *Munro* v. *State* (223 N. Y. 208) seems directly in point. There Munro while performing his duties as an employee of the State in the Kings Park State Hospital was assaulted and severely injured by an insane man and given a recovery to compensate him for such injuries. In the case at bar the claimant was not injured in his person but was injured in his estate and has at least an equitable claim for indemnity. I find no distinction in principle between the Munro claim and the one at bar. The case of *Farrington* v. *State* (248 N. Y. 112) is even perhaps more in point. There the claimant was illegally discharged

from office by the State Comptroller and on the basis of the wrong done him sought and found indemnity in the Court of Claims. Here the wrong done the claimant was by the judicial officials of the State and was just as immoral as though inflicted by State officials of other departments of government. *Olmsted* v. *Meahl*, 219 N. Y. 270.) Because they were officials immune from the consequences of judicial action does not hinder the State in rendering justice where they have failed. The judgment of the Board of Claims should be reversed and a new trial granted. [132 Misc. 182.]